UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

N.S.[1], *individually and on behalf of all others similarly situated*,
   c/o The Public Defender Service
   for the District of Columbia
   633 Indiana Avenue, N.W.
   Washington, D.C. 20004

              Plaintiff,

v.

MICHAEL A. HUGHES, United States Marshal, District of Columbia (Superior Court), in his official capacity
   Superior Court for the District of Columbia
   500 Indiana Ave., N.W.
   Washington, D.C. 20001

              Defendant.

Case: 1:20-cv-00101
Assigned To: Lamberth, Royce C.
Assign. Date: 1/14/2020
Description: TRO/PI (D-DECK)

---

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff N.S., on behalf of a class of similarly situated indigent criminal defendants in Superior Court for the District of Columbia who have been detained by the United States Marshals Service for suspected civil immigration violations, alleges as follows:

### PRELIMINARY STATEMENT

1. This case seeks to remedy and prevent the routine unlawful detention of people in the Superior Court for the District of Columbia ("Superior Court") pursuant to an unlawful policy and practice of the United States Marshals Service ("USMS" or "Marshals Service"). On a regular

---

[1] Plaintiff has filed a Motion for Leave to Proceed Using Their Initials contemporaneously with this Class Action Complaint.

basis, USMS officers exceed their statutory authority by unlawfully detaining individuals who have been ordered released by a Superior Court judge, or whose cases the United States Attorney's Office declines to prosecute, but are suspected of violating civil immigration statutes.[2] Because the Marshals Service's actions are in excess of their statutory authority, they violate the Administrative Procedure Act, 5 U.S.C. §§ 500 *et seq.* and are *ultra vires* agency action.

2. Plaintiff N.S. is a District of Columbia-area resident who was seized and detained by officers of the United States Marshals Service after he was ordered released by Magistrate Judge Hermann of the Superior Court. N.S. has lived in the District of Columbia area for eight years and has an infant child who is a United States citizen. N.S. was initially arrested on January 13, 2020, and presented before Magistrate Judge Hermann on January 14, 2020. The government sought detention prior to trial under D.C. Code Section 23-1322(a)(1)(C), as N.S. was on probation for an offense at the time of his arrest on January 13, 2020. Magistrate Judge Hermann rejected the government's request, declining to find that N.S. would "flee or pose a danger to any person or the community," as is required under District of Columbia law. D.C. Code § 23-1322(a)(2). Magistrate Judge Hermann granted N.S.'s release on his own recognizance, to return to court on January 27, 2020. Despite Magistrate Judge Hermann's order, immediately after N.S. was ordered released, N.S. was taken into custody by the Marshals Service for an "ICE hold."

3. Officers of the Marshals Service lack the authority to detain people for civil immigration violations. The "primary role and mission of the United States Marshals Service [is] to provide for the security and to obey, execute, and enforce all orders of the United States District Courts, the United States Courts of Appeals, the Court of International Trade, and the United States

---

[2]  Pursuant to D.C. Code Section 11-1729, the Marshals Service "serve[s] the courts of the District of Columbia," including the Superior Court.

Tax Court." 28 U.S.C. § 566(a). Accordingly, the Marshals Service describes its mission as "to provide Federal judicial security; apprehend fugitives and non-compliant sex offenders; secure and transport Federal prisoners; execute Federal court orders; seize and manage assets forfeited to the government; and assure the safety of endangered government witnesses and their families." U.S. MARSHALS SERV., FY 2019 PERFORMANCE BUDGET 6 (2018). To that end, the statutory authority of the Marshals Service does not include the general enforcement of civil laws of the United States, let alone the vast power to make warrantless arrests of suspected civil immigration violations.

4. Congress has carefully and specifically delineated the authority to enforce federal immigration law to Immigration and Customs Enforcement ("ICE") and certain other experienced federal immigration officials. The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.* and its implementing regulations authorize only a carefully defined group of law enforcement agencies with expertise in immigration law to exercise warrantless arrest power for suspected civil immigration violations. The Marshals Service is not such an agency.

5. The proposed class of plaintiffs seeks a preliminary and permanent order enjoining the Marshals Service from detaining and arresting individuals in Superior Court for suspected civil immigration violations and directing their immediate release. Without an injunction, likely hundreds of people will continue to be unlawfully detained in excess of the authority of the Marshals Service.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 because it arises under the Constitution and laws of the United States.

7. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. Sections 2201 and 2202, by 5 U.S.C. Section 702, by Federal Rules of Civil Procedure 57 and 65, and by the inherent equitable powers of this Court.

8. Venue is proper in this District under 28 U.S.C. Section 1391(e)(1) because a substantial part of the events or omissions giving rise to this action occurred, and continue to occur, in this District.

## PARTIES

9. N.S. was arrested on January 13, 2020. After appearing before Magistrate Judge Hermann on January 14, 2020, N.S. was ordered released after Magistrate Judge Hermann found that N.S. does not pose a risk of flight and is not a danger to the community. After Magistrate Judge Hermann released N.S., he was detained by officers of the Marshals Service.

10. Defendant Michael A. Hughes is sued in his official capacity as United States Marshal, District of Columbia (Superior Court). In this capacity, Defendant Hughes oversees the operations of USMS officers in Superior Court.

## BACKGROUND

11. By statute and regulation, Congress has authorized only specifically-designated immigration officials to detain people for suspected immigration violations. Officers of the Marshals Service are not included.

12. The INA authorizes only "immigration officers," defined as "any employee or class of employees of [ICE] or of the United States designated by the Attorney General," to enforce civil immigration law. 8 U.S.C. §§ 1101(a)(18), 1357.[3]

13. Specifically, only those ICE officers who are "authorized under regulations prescribed by the Attorney General" can, without a warrant, "arrest any alien who . . . he has reason

---

[3] The INA refers to "any employee or class of employees of the Service," 8 U.S.C. § 1101(a)(18), referring to the Immigration and Naturalization Service, *id.* § 1101(a)(34), which is the predecessor agency to ICE, *see* Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135.

4

to believe that the alien so arrested is in the United States in violation of [immigration law]." 8 U.S.C. § 1357(a)(2).

14. The Attorney General's prescribed regulations further limit the scope of ICE officers who are authorized to make warrantless arrests. Those regulations specify that *only* "immigration officers who have successfully completed basic immigration law enforcement training" may "exercise the arrest power conferred by section [1357](a)(2)." 8 C.F.R. § 287.5(c)(1). The regulations empower the following "immigration officers" to make warrantless arrests: border patrol agents, air and marine agents, special agents, deportation officers, Customs and Border Patrol ("CBP") officers, immigration enforcement agents, supervisory and managerial personnel who supervise any of the preceding officers, and certain other "[i]mmigration officers . . . who are designated" by "the Commissioner of CBP, the Assistant Secretary/Director of ICE, or the Director of the USCIS." 8 C.F.R. § 287.5(c)(1)(i)-(viii).

15. The INA also permits the Attorney General to "enter into a written agreement with a State, or any political subdivision of a State," allowing law enforcement officers of that state to "carry out" functions of immigration officers "in relation to the investigation, apprehension, or detention of aliens in the United States." 8 U.S.C. § 1357(g)(1). Under such written agreement, state law enforcement officers participating in this program must obtain a "written certification that the officers . . . performing the function under the agreement have received adequate training regarding the enforcement of relevant Federal immigration laws." *Id.* § 1357(g)(2).

16. Under the INA and its implementing regulations, certain authorized immigration officers "may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency." 8 C.F.R. § 287.7(a); *see also* 8 U.S.C. § 1357(d).

5

17. By regulation, these detainers are merely "a *request* that [the agency receiving the detainer] advise the Department [of Homeland Security], prior to release of the alien, in order for the Department to arrange to assume custody." 8 C.F.R. § 287.7(a) (emphasis added).

18. By its own terms, the ICE detainer form is a "*request*[]" that the agency receiving the detainer maintain custody of the targeted person. *See* Exhibit A (emphasis added).

19. A host of recent court opinions confirms what is clear from the implementing regulations and from the ICE detainer form itself: "[S]ettled constitutional law clearly establishes that [ICE detainers] must be deemed requests." *Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014).

20. Like an ICE detainer, an ICE I-200 warrant conveys no legal authority from ICE to any other agency. The I-200 warrant is issued *only* to "[a]ny immigration officer authorized pursuant" to the statute and regulations discussed above. *See* Exhibit B.

21. In sum, Congress has created a careful scheme under which only law enforcement officers that are extensively trained in immigration law are authorized to make warrantless arrests for suspected immigration violations. These specifically-delegated officers cannot use detainers to empower other untrained officers to exercise this authority. Officers of the Marshals Service, who do not receive such extensive training, are not included in this careful scheme, nor may they exercise those specifically-delegated powers simply by receiving a warrant or detainer.

22. The limited authority of the Marshals Service is provided for by statute. The "primary role and mission of the United States Marshals Service [is] to provide for the security and to obey, execute, and enforce all orders of [various courts], as provided by law." 28 U.S.C. § 566(a). In service of this limited mission, Congress has carefully empowered the Marshals Service with only limited authority. None of these statutory grants of power contemplates warrantless arrests for suspected civil immigration violations.

## FACTS GIVING RISE TO THIS ACTION

23. Plaintiff N.S. was arrested on January 13, 2020, and appeared before Magistrate Judge Hermann of the Superior Court on January 14, 2020.

24. After concluding that N.S. was neither a flight risk nor a danger to the community, Magistrate Judge Hermann released N.S. on his own recognizance, and ordered N.S. to return on January 27, 2020.

25. Immediately after Magistrate Judge Hermann ordered N.S. released, N.S. was detained by USMS officers. At the time of his detention and for at least two hours following his detention, neither N.S., nor N.S.'s defense counsel, nor undersigned counsel, was provided a copy of an ICE detainer or any other written information from ICE.

26. Upon information and belief, Plaintiff remains detained in the custody of the Marshals Service and the United States Marshal, District of Columbia (Superior Court) pending his transfer to civil immigration custody.

27. Upon information and belief, pursuant to a policy and practice of the Marshals Service, USMS officers routinely seize and detain individuals for suspected civil immigration infractions even after individuals are ordered released by a judge of the Superior Court, or after the United States Attorney's Office declines prosecution.

## CLASS ALLEGATIONS

28. Pursuant to Federal Rule of Civil Procedure 23(b)(1) and (b)(2), N.S. brings this action as a class consisting of:

> All indigent criminal defendants in the Superior Court for the District of Columbia: (1) who were, are, or will be detained by officers of the United States Marshals Service for suspected civil immigration violations, and (2) as to whom Immigration and Customs Enforcement has not effectuated a warrant of removal/deportation (a form I-205) and/or has not obtained an order of deportation or removal.

29. Plaintiff reserves the right to amend the class definitions or establish sub-classes as appropriate if discovery or further investigation reveals that the class should be expanded or otherwise modified.

30. <u>Numerosity</u>: The class is so numerous that joinder is impracticable. While the precise size of the class is unknown, upon information and belief, Plaintiff believes that at least dozens of people are detained by USMS officers every year for suspected civil immigration violations. Joinder is also inherently impractical because the number of unnamed, future class members who will be detained by USMS officers is unknown and unknowable. Further, proposed class members are highly unlikely to file individual suits on their own behalf given the practical, legal, linguistic, monetary, and fear-based barriers that prevent their ability to access independent counsel to challenge the actions of USMS officers.

31. <u>Commonality</u>: The claims of the class share common issues of law, including but not limited to whether USMS officers violate the APA when they detain people for alleged civil immigration violations.

32. <u>Typicality</u>: The claims of Plaintiff N.S. are typical of those of the class as a whole because he is currently detained by the Marshals Service. By definition, all class members are, or will be, detained by the Marshals Service on suspicion of civil immigration violations.

33. <u>Adequacy</u>: Plaintiff N.S. is an adequate class representative who meets all of the requirements of Rule 23(a)(4). He has no conflict of interest with other class members. He will also fairly and adequately protect the interests of the class, and understands his responsibilities as class representative. Counsel for Plaintiff will vigorously prosecute the interests of the class, and has extensive experience with the factual and legal issues litigated in this case.

34. If by the time this Complaint is reviewed, Plaintiff N.S. is no longer in the custody of the Marshals Service, he may still adequately represent the class. "[M]ooting of the named plaintiff's claims — even before class certification — will not require dismissal of the case if 'the challenged conduct and the claims raised are so inherently transitory that the trial court will not even have enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 65 (D.D.C. 2018) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013)).

35. Defendant has acted and will act on grounds generally applicable to the class, thereby making final injunctive and declaratory relief appropriate to the class as a whole. This is because Defendant's actions were taken pursuant to a policy and practice of the Marshals Service. A permanent injunction of the policy will therefore benefit all class members. The class may therefore be properly certified under Federal Rule of Civil Procedure 23(b)(2).

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 500 *ET SEQ.*

36. The APA requires the "reviewing court" to "hold unlawful and set aside agency action" that is "contrary to constitutional right" or "in excess of statutory jurisdiction." 5 U.S.C. § 706(2).

37. Defendant's detention of Plaintiff and proposed class members is final agency action that is reviewable under the APA, because Defendant's seizure of Plaintiff is not tentative or interlocutory, and Defendant's actions created legal consequences, namely, the restriction of Plaintiff's liberty. 5 U.S.C. § 704.

38. The actions of the Marshals Service are "in excess of statutory jurisdiction," 5 U.S.C. § 706(2)(C), because they exceed the scope of authority delegated to the Marshals Service

and because officers of the Marshals Service is not among the officers who Congress authorized in the INA to enforce federal civil immigration law.

39. Plaintiff and proposed class members have "suffer[ed]," and will "suffer[] legal wrong because" of Defendant's actions. 5 U.S.C. § 702

## SECOND CLAIM FOR RELIEF
### *ULTRA VIRES* ACTIONS

40. Federal law does not authorize Defendant to detain people they suspect of civil violations of federal immigration law.

41. Defendant has seized, and continues to seize Plaintiff with arrest and detention that is not authorized by any valid legal authority.

42. Defendant has acted and continues to act under color of law, but in excess of its legal authority.

43. Defendant has acted, and continues to act, *ultra vires* — that is, Defendant has acted and continue to act in excess of their statutory authority — when it detains Plaintiff for suspected civil immigration violations.

44. Judicial review is available "to determine whether the agency has acted '*ultra vires*' — that is, whether it has 'exceeded its statutory authority.'" *Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014) (citing *Leedom v. Kyne*, 358 U.S. 184 (1958)).

45. As a result of Defendant's *ultra vires* actions, Plaintiff and the proposed class suffer injury.

## THIRD CLAIM FOR RELIEF
### HABEAS CORPUS, 22 U.S.C. § 2241

46. Plaintiff and the proposed class are detained in federal custody.

47. Plaintiff and the proposed class are in custody "in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), because Defendant violated the APA when it detained Plaintiff and the proposed class for suspected civil law violations that Defendant lacks the authority to enforce.

48. The Court has the power to grant Plaintiff and the proposed class the writ of *habeas corpus*. 28 U.S.C. § 2241.

49. As a result of this violation, Plaintiff and the proposed class suffers injury.

50. Plaintiff and the proposed class seek immediate release from their unlawful detention.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and:

1. Issue an injunction prohibiting Defendant, its subordinates, agents, employees, and all others acting in concert with Defendant from seizing individuals for suspected civil immigration violations and enjoining them from undertaking such arrests;

2. Order Defendant to release all class members who are in the custody of the United States Marshals Service;

3. Issue a judgment declaring that Defendant violates the Administrative Procedure Act by detaining people suspected of civil immigration violations;

4. Enter a preliminary injunction as to the class;

5. Enter a permanent injunction preventing Defendant from detaining people suspected of civil immigration violations;

6. Award such further relief as this Court deems appropriate.

Dated: January 14, 2020
      Washington, D.C.

                         Respectfully submitted,

                         /s/ Steven Marcus*

                         Steven Marcus (D.C. Bar # 1630882)
                         Public Defender Service
                         633 Indiana Avenue N.W.
                         Washington, D.C. 20004
                         Tel. 202-824-2524
                         Fax 202-824-2525
                         *smarcus@pdsdc.org*

In accordance with D.D.C. Local Civil Rule 83.2(g), the attorney whose name is marked with an asterisk above certifies that: (i) he is a member in good standing of the District of Columbia bar; (ii) he is representing a petitioner who is indigent within the meaning of Local Rule 83.2(g), at no cost to petitioner; (iii) he has never been subject to disciplinary complaint or sanction by any court or other disciplinary authority; (iv) he possesses a copy of the Local Rules of this District and is familiar with the rules generally and as they pertain to this proceeding.

Dated: January 14, 2020