# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| N.S., *individually and on behalf of all others similarly situated,* | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | Case No. 1:20-cv-101-RCL |
| MICHAEL A. HUGHES, *in his official capacity as U.S. Marshal for the District of Columbia Superior Court,* | ) ) ) ) | |
| *Defendant.* | ) ) ) | |

## MEMORANDUM OPINION

On May 7, 2020, this Court granted plaintiff N.S.'s Motion for a Preliminary Injunction against defendant and defendant's agents, subordinates, and employees and preliminarily enjoined them from seizing individuals for suspected civil immigration violations. The Court assumes familiarity with the Memorandum Opinion (ECF No. 39) and accompanying Order (ECF No. 40) issued on May 7, 2020. On June 4, 2020 the United States Marshals Service ("USMS") filed a Motion for Reconsideration (ECF No. 41). In that motion, the USMS cites— for the first time—a nonpublic, unpublished 2002 Order of the Attorney General that purportedly authorizes the USMS to carry out civil immigration arrests. The USMS also argues that the Court improperly determined that ICE detainers do not give the USMS authority to carry out civil immigration arrests. Upon consideration of the motion, opposition (ECF No. 46), and reply (ECF No. 49), the Court will **DENY** the USMS's request for reconsideration.

## LEGAL STANDARD

The parties disagree about the applicable standard for reconsideration. The USMS

suggests that the Court should use Federal Rule of Civil Procedure ("Rule") 54(b), which

provides that "any order or other decision, however designated, that adjudicates fewer than all

the claims . . . may be revised at any time before the entry of a judgment adjudicating all the

claims and all the parties' rights and liabilities." Rule 54(b) relief is available "as justice

requires." *Cobell*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). Relevant considerations "include

whether the Court 'patently' misunderstood the parties, made a decision beyond the adversarial

issues presented, made an error in failing to consider controlling decisions or data, or whether a

controlling or significant change in the law has occurred." *Isse v. Am. Univ.*, 544 F. Supp. 2d 25,

29 (D.D.C. 2008). Plaintiffs, however, believe that Rule 59(e) is the appropriate standard. Under

Rule 59(e), the Court may grant reconsideration if the movant shows an intervening change of

controlling law, the availability of new evidence that could not have been raised prior to the

Court's order, or the need to correct a clear error or prevent manifest injustice. *See Firestone v.*

*Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Under either standard, the Court has a great deal

of discretion when deciding whether to reconsider a previous order, though the Court has more

discretion to grant a motion brought under Rule 54(b).

Although the D.C. Circuit does not appear to have ruled directly on this issue, numerous

Circuit Courts of Appeals apply Rule 59(e) to motions for reconsideration of preliminary

injunctions. *See, e.g.*, *Favia v. Indiana Univ. of Pennsylvania*, 7 F.3d 332, 337-38 (3d Cir. 1993)

(explaining that "[w]hen a district court enters an order granting preliminary injunctive relief,

parties who" choose to "file a motion for reconsideration in the district court" must do so "under

Rule 59(e)"); *Fin. Servs. Corp. of Midwest v. Weindruch*, 764 F.2d 197, 198 (7th Cir. 1985)

(determining that "an order granting a preliminary injunction is a final judgment within the meaning of . . . Rule 59(e)"). Although defendant cites *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70 (D.D.C. 2018), a U.S. District Court for the District of Columbia case applying Rule 54(b) to a motion for reconsideration of a preliminary injunction order, this District Court has also applied Rule 59(e) to motions for reconsideration of the entry of a preliminary injunction. *See, e.g.*, *Fox TV Stations, Inc. v. FilmOn X LLC*, 968 F. Supp. 2d 134, 140 (D.D.C. 2013) (applying Rule 59(e) to a motion to reconsider the entry of a preliminary injunction). The Court agrees with N.S. that Rule 59(e) is the appropriate standard by which to assess a motion to reconsider a preliminary injunction, as a preliminary injunction is a directly appealable order.[1]

## ANALYSIS

As explained below, the Court finds that the 2002 Order is not a valid basis for granting reconsideration under the Federal Rules of Civil Procedure. Even if the 2002 Order were a valid basis for reconsideration, the 2002 Order itself was facially invalid under the Administrative Procedure Act ("APA") when it was issued. Additionally, the USMS has made no new arguments that warrant reconsidering the Court's holding regarding the nature of ICE detainers. Therefore, the USMS's motion must be denied, and the preliminary injunction will remain in place.

---

[1] Even if the Court were to apply Rule 54(b), it would still deny the motion, as the USMS has also failed to meet even that more lenient standard. Neither Rule 59(e) nor Rule 54(b) allows a party to use a motion for reconsideration to reargue facts or theories on which a court has already ruled, and neither Rule 59(e) nor Rule 54(b) allows a party to use a motion for reconsideration to present theories or arguments that could have been raised earlier. *See Shvartser v. Lekser*, 330 F. Supp. 3d 356, 360-61 (D.D.C. 2018) (finding that the movant could not satisfy either Rule 59(e) or Rule 54(b) and therefore the preliminary injunction would remain in place). Additionally, because the 2002 Order is invalid under the Administrative Procedure Act and because ICE detainers and Form I-200s do not provide sufficient independent authority for the USMS to make civil immigration arrests, there is simply nothing for the Court to reconsider under either rule.

## I. 2002 ORDER

### A. The Previously Undisclosed 2002 Order is Not a Valid Basis for Reconsidering the Entry of a Preliminary Injunction.

The nonpublic, unpublished 2002 Order that defendant now cites is not a valid basis for reconsidering the issuance of a preliminary injunction. Order No. 2622-2002, titled "Delegation of Authority to the United States Marshals Service to Exercise the Powers and Duties of Immigration Officers," was issued on October 17, 2002 by Attorney General John Ashcroft. ECF No. 41-2. Not only did the USMS "regrettably neglect to present" this Order to the Court, ECF No. 41-1 at 9, but neither plaintiffs nor the Court had the ability to independently find this Order. Until now, this Order was solely in the government's possession, and the USMS failed to present it. The USMS's complete omission of this fact from its initial motion is indicative of just how far-fetched this request for reconsideration really is. *See generally* ECF No. 41. Indeed, the USMS does not cite a single case in which any court granted reconsideration based on facts or legal theories known only to the movant and which the movant failed to present. *See generally* ECF Nos. 41 & 49.

Moreover, even if this Order had been public, it was still the USMS's responsibility to bring it to the Court's attention. Evidence that the movant knew about (or should have known about) but which it failed to disclose is not a valid basis for a motion to reconsider. *See Shatsky v. Palestine Liberation Org.*, 292 F. Supp. 3d 188, 192 (D.D.C. 2017) (explaining that courts "routinely deny Rule 59(e) motions where all relevant facts were known or should have been known by the party prior to the entry of judgment"). "[I]t is well-established that [a] motion[] for reconsideration . . . cannot be used as   . . . a vehicle for presenting theories or arguments that could have been advanced earlier." *Ali v. Carnegie Inst. of Washington*, 309 F.R.D. 77, 81 (D.D.C. 2015). Defense counsel asserts that he did not know of the 2002 Order until after the

preliminary injunction went into effect. ECF No. 49 at 17. The date upon which defense counsel

actually learned of the 2002 Order, however, is irrelevant, as it was the USMS's responsibility to

bring forward an internal order that purportedly gives it authority to make civil immigration

arrests, especially when that order was in the government's sole possession. Therefore, no

"manifest injustice" will occur under Rule 59(e) if the preliminary injunction is left in place, as

the USMS could have submitted the 2002 Order to the Court any time before the preliminary

injunction went into effect on May 7, 2020.[2]

### B. In Any Event, the 2002 Order is Invalid.

Even if this were a proper motion to reconsider, the 2002 Order was facially invalid

under the APA when it was issued, and it is thus incapable of providing the USMS with the

authority to make civil immigration arrests. In challenging the 2002 Order, N.S. raises three

issues that the Court must address: (1) did the Homeland Security Act of 2002 ("HSA") vitiate

the 2002 Order; (2) did the 2002 Order satisfy the requirements set forth in the Administrative

Procedure Act ("APA"); and (3) does the 2002 Order conflict with 8 C.F.R. § 287.5? As

explained below, the Court finds that the HSA's savings provision applies to the 2002 Order, and

thus the HSA did not vitiate the 2002 Order. The 2002 Order, however, violates the APA by

failing to rely upon any applicable authority that would allow the Attorney General to issue the

order, and it is thus invalid. Additionally, even if the 2002 Order were valid under the APA,

allowing USMS officers to make civil immigration arrests would violate 8 C.F.R. § 287.5.

Therefore, the 2002 Order does not provide the requisite authority for the USMS to make civil

---

[2] Similarly, even if the Court were to apply the Rule 54(b) standard, justice does not require reconsideration under these circumstances.

immigration arrests, and reconsideration based on the existence of the 2002 Order is not warranted.

### 1. HSA

Plaintiffs contend that the HSA—which centralized immigration enforcement authority in the Department of Homeland Security ("DHS")—vitiated the 2002 Order. The Attorney General issued the 2002 Order on October 17, 2002. The HSA was passed just over a month later on November 25, 2002 and transferred "all functions . . . personnel, assets, and liabilities" involving the "detention and removal program" from the Immigration and Naturalization Service ("INS") to DHS. Pub. L. No. 107-296 § 401, 116 Stat. 2192 (codified at 6 U.S.C. § 251 (2002)). The HSA abolished the INS once all transfers of authority were complete. Pub. L. No. 107-296 § 471, 116 Stat. 2205 (codified at 6 U.S.C. § 291 (2002)). Plaintiffs argue that the 2002 Order, which purported to delegate immigration enforcement authority from the INS to the USMS (both of which were housed in the Department of Justice at the time) did not survive the centralization and consolidation of that same authority into DHS.

The HSA represents a significant shift in immigration authority, and the "authorities" that were once exercised by the Attorney General and the INS "now reside in the Secretary of Homeland Security." *Clark v. Martinez*, 543 U.S. 371, 375 n.1 (2005); *see also New York v. DOJ*, 951 F.3d 84, 120 n.33 (2d Cir. 2020) (noting that "removal responsibilities" once given to the Attorney General "have been transferred to the Secretary of DHS). The D.C. Circuit has similarly confirmed that the HSA transferred the Attorney General's immigration authority to the Secretary of Homeland Security. *See Make the Rd. New York v. Wolf*, 2020 U.S. App. LEXIS 19460, at *1 n.1 (D.C. Cir. June 23, 2020). Therefore, defendant's argument that the HSA

transferred only the detention and removal functions exercised by the INS and not those exercised by the Attorney General, *see* ECF No. 41-1 at 10, is patently incorrect.

Although the HSA's reorganization of immigration enforcement authority initially suggests that the 2002 Order did not survive the HSA's passage, the analysis does not end there. The HSA contains an explicit savings provision, which reads:

> Completed administrative actions of an agency shall not be affected by the enactment of this Act or the transfer of such agency to the Department, but shall continue in effect according to their terms until amended, modified, superseded, terminated, set aside, or revoked in accordance with law by an officer of the United States or a court of competent jurisdiction, or by operation of law.

6 U.S.C. § 552(a)(1). The savings provision goes on to define a "completed administrative action" to "include[] orders, determinations, rules, regulations, personnel actions, permits, agreements, grants, contracts, certificates, licenses, registrations, and privileges." 6 U.S.C. § 552(a)(2). Plaintiffs contend that by using the term "such agency," the savings provision only applies to actions of agencies that were transferred to DHS. In other words, completed administrative actions of an agency that was moved from some other department to DHS remain in place; however, completed administrative actions taken by the Attorney General do not remain in place because the Attorney General was not transferred to DHS. Defendant, however, contends that because Section 552(a)(1) begins with the phrase, "Completed administrative actions of *an* agency . . . " it applies to all agencies broadly, and the presence of the disjunctive "or" precludes plaintiffs' reading of the text. Under defendant's interpretation, the savings provision applies to any agency whose completed administrative actions would otherwise be affected by the HSA *as well as* to any agency transferred to DHS.

The Court agrees with defendant's interpretation of the text. 6 U.S.C. § 541(1) broadly defines "an agency" as including "any entity, organizational unit, program, or function." If

Congress wanted to limit the savings provision to completed actions of agencies that were transferred to DHS, it could have done so. Instead, it chose to use broad statutory language that encompasses all agencies. This is confirmed by *King v. United States*, wherein the Court of Federal Claims found that "delegations granted from GSA to the FBI . . . continued in effect" due to Section 552's savings provision. 130 Fed. Cl. 476, 480 (2017). Like the Attorney General, GSA was not transferred to DHS, meaning that the Court of Federal Claims must have interpreted the savings provision as applying to all agencies affected by the statute, not just the specific agencies that were transferred to DHS. The Court agrees with this literal reading of Section 552(a)'s text and therefore finds that the 2002 Order falls within the HSA's savings provision.

### 2. APA

Plaintiffs argue that the 2002 Order is invalid under the APA, and therefore it does not matter whether the HSA savings provision applies. In response, the USMS first tries to argue that N.S.'s "attempt to invalidate the Attorney General's delegation is outside the scope of this case" because N.S. has not brought this case as a direct challenge the 2002 Order. ECF No. 49 at 7-8. Quite frankly, this argument is absurd, and the validity of the 2002 Order is plainly within the scope of this case. Plaintiffs brought this lawsuit challenging whether the USMS has the power to make civil immigration arrests. Therefore, plaintiffs are entitled to challenge any source of authority that defendant cites as supposedly providing the USMS with that authority. Moreover, N.S. could not have directly challenged the 2002 Order when he filed his Complaint, as the order was solely in the government's possession until defendant filed the motion to reconsider. Therefore, the Court will consider the validity of the 2002 Order under the APA.

In arguing that the 2002 Order is invalid under the APA, N.S. makes two primary arguments. First, N.S. argues that the 2002 Order is invalid because it did not go through notice and comment. Second, N.S. argues that the 2002 Order is invalid because the statutory authority upon which the Attorney General relied when promulgating the order is inapplicable. Although the Court does not believe notice-and-comment procedures were required, the Court agrees that 28 U.S.C. §§ 509 and 510—the statutory provisions directly cited in the 2002 Order—do not permit the Attorney General to delegate immigration enforcement authority to the USMS. Moreover, *Chenery* precludes the Court from considering 8 U.S.C. § 1103(a) as a basis for the 2002 Order because the 2002 Order does not purport to rely on that statutory provision. Therefore, the 2002 Order is incapable of providing the USMS with the authority to make civil immigration arrests.

### a. Notice and Comment

N.S. argues that the 2002 Order needed to go through notice and comment. The Court disagrees. Unless a specific statute provides otherwise, notice-and-comment procedures are not required for "rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). Procedural rules relate to how an agency carries out its functions and may not alter substantive rights. *See Batterton v. Marshall*, 648 F.2d 694, 702, 710 (D.C. Cir. 1980). In assessing whether a rule has a substantive effect, courts ask "whether the substantive effect is sufficiently grave so that notice and comment are needed to safeguard the policies underlying the APA." *Elec. Privacy Info. Ctr. v. DHS*, 653 F.3d 1, 5-6 (D.C. Cir 2011). A "critical feature" of a procedural rule is that it regulates internal agency actors and processes but not members of the public. *See JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994).

N.S. argues that the 2002 Order does not fall within the APA's exception for procedural rules because it alters substantive rights and interests by subjecting aliens to greater risk of arrest. *See* ECF No. 46 at 20; *see also Elec. Privacy Info. Ctr.*, 653 F.3d at 5-6 (construing exception narrowly). In response, the USMS argues that internal delegations within an agency are classic internal procedures. *See* ECF No. 49 at 8; *see also L.M.-M. v. Cuccinelli*, 2020 U.S. Dist. LEXIS 35897, at \*71 n.12 (D.D.C. Mar. 1, 2020) ("A delegation of authority to perform defined agency duties may be exempt from the notice-and-comment process as a rule of 'agency organization.'") Defendant further argues that the 2002 Order did not change any rights or interests because the same people were subject to arrest and detention. *See* ECF No. 49 at 9.

At its core, the 2002 Order describes how the federal government will enforce immigration warrants. Regardless of whether a person is arrested for an immigration violation by ICE or the USMS, the burdens imposed on that person and the rights afforded to that person are the same. The rule permits an agency employee to act, but it does not require or permit a member of the public to act. It also does not change the substantive rights of any members of the public, unlike other cases wherein the D.C. Circuit has found rules to be substantive. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 653 F.3d at 5-6 (treating a rule requiring airline passengers to undergo more invasive screening as substantive). Moreover, neither the severe consequences of an immigration arrest nor the political salience of immigration enforcement requires notice-and-comment procedures because the question is ultimately one of how agencies organize themselves internally. Public participation is no more required in a decision to delegate authority to conduct immigration arrests than in a decision to require a deputy marshal to literally change hats when performing the duties of an immigration officer. The procedural rule exception gives agencies flexibility in how they carry out their functions, *see Mendoza v. Perez*, 754 F.3d 1002, 1023

10

(D.C. Cir. 2014), and delegating authority fits squarely within that zone of flexibility. Additionally, because the 2002 Order does not adversely affect members of the public, it is effective even absent publication. 5 U.S.C. § 552; *see Lonsdale v. United States*, 919 F.2d 1440, 1446 (10th Cir. 1990); *United States v. Goodman*, 605 F.2d 870, 888 (5th Cir. 1979); *Hogg v. United States*, 428 F.2d 274, 280 (6th Cir. 1970); *United States v. Hayes*, 325 F.2d 307, 308-309 (4th Cir. 1963).

N.S. also suggests that under *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92 (2015), the Attorney General was required to issue the 2002 Order after notice and comment because it significantly deviates from a prior agency interpretation. *See* ECF No. 46 at 19-20. Defendant responds that *Mortgage Bankers* actually forecloses N.S.'s interpretation of notice-and-comment requirements because it rejected the *Paralyzed Veterans* rule on which N.S. relies. *See* ECF No. 49 at 8-9. Defendant's interpretation of *Mortgage Bankers* is the correct one. *See Mortg. Bankers Ass'n*, 575 U.S. at 101 ("Because an agency is not required to use notice-and-comment procedures to issue an initial interpretive rule, it is also not required to use those procedures when it amends or repeals that interpretive rule."). Moreover, N.S. does not point to any prior order that the 2002 order would have amended. This means that even if N.S.'s interpretation of *Mortgage Bankers* is correct, he has not explained how it would apply to the 2002 Order.

N.S. further argues that because the Attorney General issued prior orders delegating arrest authority under notice-and-comment rulemaking, he was required to use those same procedures in issuing the 2002 Order. *See* ECF No. 46 at 20-21. The USMS counters by distinguishing the orders N.S. cites and by pointing to analogous orders issued without notice and comment. *See* ECF No. 49 at 9-10. The Court agrees with defendant on this point. The Attorney General's past practices do not change what the Court may require of him here.

11

"Agencies are free to grant additional procedural rights in the exercise of their discretion, but

reviewing courts are generally not free to impose them if the agencies have not chosen to grant

them." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524

(1978). To mandate notice-and-comment procedures here would be a classic violation *Vermont*

*Yankee*. For these reasons, N.S.'s argument that the 2002 Order needed to go through notice and

comment fails.

### b. Chenery

N.S.'s second argument about why the 2002 Order is invalid under the APA is that the

government's stated rationale for promulgating the 2002 Order fails to support such a delegation

of authority. The 2002 Order itself begins, "By virtue of the authority vested in me as Attorney

General, including 28 U.S.C. §§ 509 and 510" and goes on to state that the Attorney General is

authorizing USMS officers to act as immigration officers. Section 509 explains that "[a]ll

functions of other officers of the Department of Justice and all functions of agencies and

employees of the Department of Justice are vested in the Attorney General," with a few

enumerated exceptions. Section 510 is the general delegation provision, which reads in its

entirety, "The Attorney General may from time to time make such provisions as he considers

appropriate authorizing the performance by any officer, employee, or agency of the Department

of Justice of any function of the Attorney General." These statutory provisions, however, are not

part of the Immigration and Nationality Act ("INA"), which is a "comprehensive federal

statutory scheme for regulation of immigration and naturalization," *Chamber of Commerce of*

*U.S. v. Whiting*, 563 U.S. 582, 587 (2011), and was "intended to be a comprehensive and

complete code," *Elkins v. Moreno*, 435 U.S. 647, 666 (1978). The Attorney General's broad

delegation authority does not apply where Congress has specifically and separately allocated

12

enforcement authority over a certain action or set of actions. *See United States v. Giordano*, 416 U.S. 505, 513 (1974) (holding that 28 U.S.C. § 510 did not allow the Attorney General to delegate wiretap authorizations because Congress had specifically given that power to the Attorney General and his assistants, and thus the general delegation provision in 28 U.S.C. § 510 did not apply). Congress used the INA to carefully ensure that trained immigration officers were responsible for making civil immigration arrests. *See, e.g.*, 18 U.S.C. § 1357. Therefore, the general delegation power described in Section 510 was insufficient to permit the Attorney General to give the USMS authority over civil immigration arrests, as that would have represented a departure from the INA.

The USMS does not even attempt to argue that 28 U.S.C. §§ 509 and 510 support the Attorney General's promulgation of the 2002 Order. All the USMS does is note that "the Attorney General did not only invoke the authority in §§ 509 and 510, with which Plaintiff takes issue, but rather more broadly invoked the 'authority vested [in] me as Attorney General, *including* 28 U.S.C. §§ 509 and 510.'" ECF No. 49 at 10 (citing 2002 Order) (emphasis added by defendant). The USMS's complete failure to include even a single sentence in either its motion or its reply suggesting that these statutory provisions gave the Attorney General authority to issue the 2002 Order is quite telling. The Court agrees with N.S. that although the Attorney General had general delegation authority under Section 510, he did not have the authority to delegate immigration enforcement authority when Congress used the INA to specifically place that authority elsewhere.

Instead of arguing that 28 U.S.C. §§ 509 and 510 apply, the USMS argues that because the 2002 Order did not limit itself to 28 U.S.C. §§ 509 and 510, the government can now use 8 U.S.C. § 1103 to validate it. In making this argument, the USMS has largely ignored the

fundamental principles of administrative law set forth in *Chenery*. The Supreme Court, however, has been clear that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *SEC v. Chenery Corp.* (*Chenery I*), 318 U.S. 80, 95 (1943). The Supreme Court has further clarified:

> If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.

*SEC v. Chenery Corp.* (*Chenery II*), 332 U.S. 194, 196-97 (1947) (describing *Chenery I*). N.S. argues that the government cannot explain or justify the 2002 Order by relying on 8 U.S.C. § 1103(a) when the order itself cites only to 28 U.S.C. §§ 509 and 510. *See* ECF No. 46 at 17-19. The USMS contends that *Chenery I* does not apply in this posture where N.S.'s Complaint does not seek to set aside the 2002 Order under the APA. As explained above, however, that argument is flawed. Moreover, *Chenery I* set forth a "foundational principle" of administrative law. *Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 117 (2d Cir. 2007). Defendant cannot cabin that landmark decision to challenges brought directly under the APA, as *Chenery I* applies every time a court evaluates the validity of an agency's action. The Court is not precluded from analyzing the validity of the 2002 Order simply because N.S.'s Complaint does not directly challenge that order. Defendant's motion to reconsider depends on the validity of the 2002 Order, and the USMS may only defend that order based on the reasoning the Attorney General offered at the time when he issued the order.

This means that the USMS may only rely on 28 U.S.C. §§ 509 and 510—not on 8 U.S.C. § 1103(a)—when defending the order. In its attempt to bootstrap in 8 U.S.C. § 1103(a), the USMS relies upon the order's non-exclusive language, which refers generally to "authority

vested me as Attorney General." To hold that such a vague statement satisfies *Chenery I* would be to render meaningless the principle that courts may only rely on agencies' contemporaneous explanations for their actions. To be sure, courts will give agencies leeway when their "path[s] may reasonably be discerned." *Bowman Transp. Inc. v. Arkansas-Best Freight System*, 419 U.S. 281, 286 (1974). An agency may not, however, gesture vaguely at the U.S. Code and then claim that any provision within its pages supports its decision. A boilerplate phrase that captures all federal authority an official has does no more to promote agency accountability and public confidence than a mere *post hoc* rationalization. *See DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020). *Chenery I* thus prohibits the Court from considering whether 8 U.S.C. § 1103(a) supports the 2002 Order because the Attorney General did not refer to that authority in any meaningful way when he issued the order. Therefore, because 28 U.S.C. §§ 509 and 510 are insufficient to support the 2002 Order and because the Court may not consider 8 U.S.C. § 1103(a), the 2002 Order was facially invalid under the APA at the time it was issued.

### 3. 8 C.F.R. § 287.5

Even if the 2002 Order were valid under the APA, USMS officers still do not meet the requirements of 8 C.F.R. § 287.5. Generally speaking, USMS officers are not considered immigration officers and thus they are not usually bound by any requirements set forth in Section 287.5, which is clearly titled "Exercise of power by *immigration officers*." (emphasis added). The 2002 Order, however, purports to grant them authority "to exercise the functions of *immigration officers*." (emphasis added). Therefore, if a USMS officer acts under authority granted to him or her by the 2002 Order, he or she is acting specifically as an *immigration officer*, and Section 287.5 applies. Section 287.5(c) lists the types of immigration officers who may make arrests, and the USMS does not appear anywhere on that list. Furthermore, Section

287.5(c) requires that immigration officers "have successfully completed basic immigration law enforcement training" before making any arrests. It is undisputed that USMS officers have not completed any such training. Therefore, even if the 2002 Order were valid under the APA, USMS officers still do not meet the requirements of Section 287.5.

## II. THE NATURE OF ICE DETAINERS

The USMS has also argued that the Court improperly determined that an ICE detainer is not a "true warrant." The USMS's argument on this point suggests that it did not fully understand the prior Memorandum Opinion. Although the Court will not repeat its detailed analysis of ICE detainers here, some additional explanation may be useful. To be clear, the Court never held that an ICE detainer with a Form I-200 is *per se* invalid. Rather, the Court said that an ICE detainer and accompanying Form I-200 on their own are not sufficient to give the USMS authority to make civil immigration arrests. The Court specifically noted that its ruling has no impact on the ability of ICE agents or other federal immigration officers (or state/local officials operating under a cooperation agreement) to act on ICE detainers—its ruling addresses only *the USMS's authority* to act on ICE detainers. Indeed, the Court intentionally refrained from commenting on the general validity of an ICE detainer under the Fourth Amendment, as plaintiffs have not raised a Fourth Amendment challenge in this case. The Supreme Court cases that the USMS cites—and which the USMS claims that this Court blatantly disregarded—are thus inapplicable to the question at hand, as those cases were about whether an arrest based on an administrative warrant is a violation of the Fourth Amendment.

In finding that an ICE detainer is not a "true warrant," the Court was only noting that an ICE detainer is not issued by a neutral magistrate, and thus the ICE detainer and Form I-200

alone—unlike a "true warrant" in the traditional sense of the word "warrant"—did not

automatically give the USMS authority to arrest N.S. Making an arrest based on an ICE detainer

alone would certainly be a warrantless arrest, and although an accompanying Form I-200 serves

as an administrative warrant, a Form I-200 is not designed to be executed by an officer of the

USMS. As the overwhelming number of cases note, the Form I-200 allows federal *immigration*

*officers* to make civil arrests. *See, e.g.*, *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 187 (5th

Cir. 2018) ("It is undisputed that federal immigration officers may seize aliens based on an

administrative warrant attesting to probable cause of removability."); *Abriq v. Metro Gov't of*

*Nashville & Davidson County*, 333 F. Supp. 3d 783, 786 (M.D. Tenn. 2018) (explaining that

"[f]ederal *immigration officials* may seize aliens based on administrative warrants attesting to

probable cause of removability" like the Form I-200) (emphasis added); *Lopez-Flores v. Douglas*

*Cty.*, 2020 U.S. Dist. LEXIS 94847, at *7 (D. Or. May 30, 2020) (noting that "only authorized

immigration officers" may make civil immigration arrests under a Form I-200).

  The Form I-200 specifically says that it is directed to "any federal immigration officer

authorized pursuant to section 236 of the 287 of the Immigration and Nationality Act and part

287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration

violations." See ECF No. 3-1 at 6 (Sample Form I-200). This means that Form I-200s

specifically limit themselves to being executed by those who meet the requirements of 8 C.F.R. §

287.5. It is undisputed that officers of the USMS are not federal immigration officers (though the

invalid 2002 Order purported to make them immigration officers), and it is similarly undisputed

that they do not receive the training required under 8 C.F.R. § 287.5 to execute this particular

administrative warrant. Essentially, USMS officers are not proper executors of ICE detainers. No

one challenges that 28 C.F.R. § 0.111(a) gives the USMS general authority to execute federal

custodial warrants; however, that power does not extend to administrative warrants whose plain

language precludes non-immigration officers—like USMS officers—from executing them. In

light of this crucial distinction, the USMS has presented no argument that would justify reversing

course and finding that an ICE detainer and Form I-200 are sufficient to enable the USMS to

carry out a civil immigration arrest. Therefore, reconsideration is not warranted under Rule

59(e), nor would it be warranted under Rule 54(b).


## CONCLUSION

Based on the foregoing, the Court will **DENY** defendant's Motion for Reconsideration

(ECF No. 41). The preliminary injunction issued on May 7, 2020 (ECF No. 40) shall remain in

effect.

A separate Order accompanies this Memorandum Opinion.


Date: July 24 2020

Royce C. Lamberth
United States District Court Judge