## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **N.S.**, *individually and on behalf of all others similarly situated,* | |
| Plaintiff, | |
| **v.** | Case No. 1:20-cv-101-RCL |
| **ROBERT A. DIXON**, *in his official capacity as U.S. Marshal for the District of Columbia Superior Court,* | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

On May 7, 2020, this Court enjoined the defendant, in his official capacity as United States Marshal for the District of Columbia Superior Court, and defendant's agents, subordinates, and employees from seizing individuals for suspected immigration violations. *N.S. v. Hughes*, 335 F.R.D. 337 (D.D.C. 2020). Plaintiff N.S., on behalf of both himself and the certified class, seeks to make that preliminary injunction permanent and moves for summary judgment. ECF No. 75. Defendant cross-moves for summary judgment. ECF No. 84. Upon consideration of these motions, their respective oppositions and replies, ECF Nos. 90 & 97, and the record herein, the Court will **GRANT IN PART** and **DENY IN PART** plaintiff's motion for summary judgment and **GRANT IN PART** and **DENY IN PART** defendant's cross-motion for summary judgment. The Court will also permanently **ENJOIN** defendant and defendant's agents, subordinates, and employees from arresting and detaining criminal defendants in the Superior Court for the District of Columbia for suspected civil immigration violations.

1

# I. BACKGROUND

## A. Factual Background

The Court assumes familiarity with the material facts of the case, which are undisputed. N.S., a resident of the District of Columbia proceeding under a pseudonym, was arrested on January 13, 2020, for robbery and destruction of property and arraigned before Magistrate Judge Heide L. Herrmann the following day. ECF No. 75-2 ¶ 1. Magistrate Judge Herrmann ordered N.S. released on his own recognizance. Admin. Record ("AR"), ECF No. 69 at 58–59. But instead of releasing him from custody, the United States Marshals Services ("USMS") detained N.S. until officers from Immigration and Customs Enforcement ("ICE") took him into custody. *Id.*

The USMS's failure to release N.S. was based on an ICE detainer. *N.S.*, 335 F.R.D. at 343. An ICE detainer is an "Immigration Detainer-Notice of Action[] to any other Federal, state, or local law enforcement agency" that "advise[s] another law enforcement agency that the Department [of Homeland Security] seeks custody of an alien presently in the custody of that agency." *Id.* (quoting 8 C.F.R. § 287.7(a)). An ICE detainer "request[s] that such agency advise the Department, prior to the release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." *Id.* This "ICE hold" forms the basis of N.S.'s complaint—N.S. maintains that the USMS lacks the authority to make civil immigration arrests.

The USMS is a federal law enforcement agency housed within the Department of Justice and under the authority of the Attorney General of the United States. 28 U.S.C. § 564. Though the USMS was solely an arm of the federal courts when initially created by the Judiciary Act of 1789, USMS officers have served both the judiciary and the Attorney General since 1861. *N.S.*, 335 F.R.D. at 342. The USMS's mission, codified in 28 U.S.C. § 566(a), is to "provide for the security

and to obey, execute, and enforce all orders of the United States District Courts, the United States Courts of Appeals, the Court of International Trade, and the United States Tax Court, as provided by law." The USMS also may "execute all lawful writs, process, and orders issued under the authority of the United States," 28 U.S.C. § 566(c); may exercise the same powers "which a sheriff of the State may exercise in executing the laws thereof," 28 U.S.C. § 564; and "shall . . . exercise such other functions as may be delegated by the Attorney General." 28 U.S.C. § 561(b). But like any other executive agency, the USMS does not have free rein—it is "not permitted to act without authorization from a statute or regulation." *N.S.*, 355 F.R.D. at 343.

## B. Procedural History

N.S. brought this complaint as a putative class action, alleging that the USMS's "ICE hold" practice was in excess of statutory jurisdiction and must be set aside under the Administrative Procedure Act. ECF No. 3 at 9 (citing 5 U.S.C. § 706(2)(c)). He also alleged that the USMS acted *ultra vires*.[1] ECF No. 3 at 10. N.S. moved for a preliminary injunction. ECF No. 4.

The Court issued a preliminary injunction on May 7, 2020. *N.S.*, 335 F.R.D. at 337. The preliminary injunction also forced the Court to consider N.S.'s class certification motion, ECF No. 5, which the Court granted. The Court certified the following class pursuant to Fed. R. Civ. P. 23(b)(2):

> All indigent criminal defendants in the Superior Court for the District of Columbia: (1) who were, are, or will be detained by officers of the United States Marshals Service for suspected immigration violations, and (2) as to whom Immigration and Customs Enforcement has not effectuated a warrant of

---

[1] N.S. raised a third claim in his complaint seeking release from unlawful detention pursuant to habeas corpus for himself and his class members. ECF No. 3 at 11.

> removal/deportation (a form I-205) and/or has not obtained an order
> of deportation or removal.

*N.S.*, 335 F.R.D. at 355.

When considering the motion for preliminary injunction, this Court noted that the "underlying facts of this case appear to be relatively undisputed, meaning that plaintiff's claim is a pure question of law for the Court to resolve." *Id.* at 345. Resolving the claim, the Court concluded that "N.S. has proven that the [USMS] lacked the necessary authority to detain him." *Id.* Defendant pointed to a number of sources of authority that it claimed provided USMS with the necessary authority to make civil immigration arrests, but the Court rejected each one. The Court found that "ICE detainers do not confer upon the recipient agency the legal authority to make an arrest," nor do the USMS's enabling statutes (28 U.S.C. §§ 564, 561, & 566). *Id.* at 347–51. Moving on to the final three preliminary injunction factors, the Court found that the unlawful seizures at issue in this case constitute irreparable harm and class members were likely to suffer this irreparable harm in the future *Id.* at 351–52. Finally, the Court found that the USMS would not be injured by an injunction that ends an unlawful practice and that the injunction would further the public interest. *Id.* at 355. Accordingly, the Court entered the following injunction:

> Defendant and defendant's agents, subordinates, and employees are
> hereby preliminarily ENJOINED from seizing individuals for
> suspected civil immigration violations.

ECF No. 40.

A month after the preliminary injunction was entered, defendant moved for reconsideration and for the dissolution of the preliminary injunction. ECF No. 41. Defendant's motion focused on two key arguments. First, defendant pointed to a newly produced 2002 Order of Attorney General John Ashcroft. *See* Order No. 2622-2002, *Delegation of Authority to the United States Marshals Service to Exercise the Powers and Duties of Immigration Officers* (Oct. 17, 2002), AR at 48. "By

4

virtue of the authority vested in [the] Attorney General, including 28 U.S.C. §§ 509 and 510," the 2002 Order authorized the USMS to "exercise the functions of immigration officers for the purposes of . . . determining the location of[] and apprehending[] any alien who is in the United States in violation of the Immigration and Nationality Act of 1952." *Id.* Second, defendant reargued the same theory that an ICE detainer confers the USMS with the authority to detain persons based on suspected civil immigration violations. ECF No. 41 at 5.

The Court denied the motion for reconsideration. It found that the 2002 Order was facially invalid under the APA because the government's stated rational for promulgating the 2002 Order "fails to support such a delegation of authority." *N.S. v. Hughes*, No. 1:20-cv-101 (RCL), 2020 WL 4260739, at *5 (D.D.C. July 24, 2020). The 2002 Order invoked only 28 U.S.C. §§ 509 and 510 as the basis for its authority. AR at 48. But those statutory provisions are not part of the Immigration and Nationality Act ("INA"), and broad delegation authority "does not apply where Congress has specifically and separately allocated enforcement authority over a certain action or set of actions." *Id.* (citing *United States v. Giordano*, 416 U.S. 505, 513 (1974)). Accordingly, the Court held that the 2002 Order was facially invalid because it violated the "fundamental principles of administrative law set forth in [*SEC v. Chenery Corp. (Chenery I)*, 318 U.S. 80, 95 (1943)]" by failing to invoke the proper delegation authority under the INA. *N.S.*, 2020 WL 4260739, at *6. The Court also found that even if the 2002 Order were facially valid, USMS officers "do not meet the requirements of 8 C.F.R. § 287.5," which requires immigration officers to have "successfully completed basic immigration law enforcement training" before making any arrests. *Id.* at *7.

Finally, the Court reiterated that ICE detainers "on their own are not sufficient to give the USMS authority to make civil immigration arrests." *Id.*

Plaintiff next moved the court to "clarify" the language of the preliminary injunction. ECF No. 57. On November 13, 2020, the Court slightly modified the injunction to read:

> Defendant and defendant's agents, subordinates, and employees are hereby preliminarily ENJOINED from arresting and detaining individuals for suspected civil immigration violations. It is ORDERED that this preliminary injunction shall take effect immediately and shall remain in effect pending final resolution of this matter.

ECF No. 72.

Both parties subsequently moved for summary judgment. Plaintiff relies on the same theories as in his motion for a preliminary injunction. ECF No. 75. Defendant recycles the arguments mentioned above regarding ICE detainers, the USMS enabling statutes, and the 2002 Order as bases for authority, while also putting forth one new argument: that a 1996 Order confers the USMS with the authority necessary for an "ICE hold." ECF No. 84. These motions are now ripe.

## II. LEGAL STANDARD

### A. Summary Judgment

When a court reviews motions for summary judgment in a suit "seeking review of an agency's actions, the standard under Fed. R. Civ. P. 56(a) does not apply." *Beyond Nuclear v. Dep't of Energy*, 233 F. Supp. 3d 40, 47 (D.D.C. 2017). The Court must instead decide as a matter of law "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Coe v. McHugh*, 968 F. Supp. 2d 237, 240 (D.D.C. 2013). In these types of APA cases, summary judgment is favored. *Zemeka v. Holder*, 963 F. Supp. 2d 22, 24 (D.D.C. 2013).

### B. Permanent Injunction

A plaintiff seeking a permanent injunction must satisfy a four-factor test. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010). He must demonstrate: "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange LLC*, 547 U.S. 338, 391 (2006). When "the government is a party, and 'the government's interest is the public interest,' the last two factors merge." *Ramirez v. U.S. Immigr. & Customs Enf't*, No. 1:18-cv-508 (RC), 2021 WL 4284530, at *3 (D.D.C. Sept. 21, 2021) (quoting *Pursuing Am. Greatness v. Fed. Elec. Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016)). The standards for a preliminary injunction are "essentially the same as for a permanent injunction with the exception that the plaintiff" must actually succeed on the merits. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). Failure to satisfy any factor "is grounds for denying relief." *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015).

### III. DISCUSSION

### A. Plaintiff Has Demonstrated That The USMS Acted In Excess Of Statutory Jurisdiction Or Authority

The question at the core of this case is simple: did the USMS have the authority to detain N.S. and fellow class members after they were ordered released or after criminal charges were dropped? The "history of the USMS shows that it cannot act without Congressional authorization." *N.S.*, 335 F.R.D. at 349. And the APA requires courts to "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2)(C). Accordingly, defendant's task is to provide a source of authority for the USMS's "ICE hold"

7

practice. In its cross-motion for summary judgment, the USMS points to numerous potential sources of authority. ECF No. 84-1 at 8–29. The Court has already considered and rejected most of these sources. *See N.S.*, 335 F.R.D. at 345–51; *N.S.*, 2020 WL 4260739, at *2–8. Defendant does provide one new source of authority: a 1996 Order by then-Deputy Attorney General Jamie Gorelick. AR at 42. But the 1996 Order does not confer authority to arrest or detain, the acts challenged here. Nor does it save the 2002 Order from its facial invalidity. Without statutory authority for the "ICE hold" practice, the USMS violated the APA and acted *ultra vires* when it detained N.S. after the magistrate judge ordered him released.

Below, the Court will address each of the purported sources of authority cited in defendant's motion for summary judgment: the ICE detainer; USMS regulation 28 C.F.R. § 0.111(a) and statute 28 U.S.C. § 566(c); the new 1996 Order; and the 2002 Order.

i.    *ICE Detainers Do Not Confer The USMS With Authorization To Make Civil Immigration Arrests*

For the third time, defendant argues that ICE detainers somehow confer authority for other law enforcement agencies like the USMS to detain individuals on suspected immigration violations. ECF No. 84-1 at 8–10. The Court must again reject this argument. *See N.S.*, 335 F.R.D. at 346–48 (explaining why ICE detainers and the I-200 form do not confer the USMS the authority to make an arrest); *N.S.*, 2020 WL 4260739, at *7–8 (holding the same on a motion to reconsider). While the Court will not repeat its full analysis of ICE detainers here, it will reiterate that "ICE detainers do not confer upon the recipient agency the legal authority to make an arrest." *N.S.*, 335 F.R.D. at 346. An ICE detainer is a "mere request," as described in 8 C.F.R. § 287.7(a) and as repeatedly admitted in litigation by ICE itself. *Id.* "All Courts of Appeals" that have considered ICE detainers have "refer[red] to them as 'requests . . .' rather than as actual grants of authority."

*Galarza v. Szalczyk*, 745 F.3d 634, 640 (3d Cir. 2014) (collecting cases). The defendant puts forth no compelling reason for the Court to reconsider this holding.

     *ii.*     *Neither 28 C.F.R. § 0.111(A) Nor 28 U.S.C. § 566(C) Authorizes The USMS To Arrest Or Detain Individuals Based On Suspected Civil Immigration Violations*

Defendant next points to a regulation authorizing USMS officers to execute all "Federal custodial . . . warrants as directed," 28 C.F.R. § 0.111(a), and a statute declaring that USMS officers "shall execute all lawful writs, process, and orders issued under the authority of the United States," 28 U.S.C. § 566(c), to argue that the USMS has the authority to detain individuals based on suspected civil immigration violations. ECF No. 84-1 at 24–30. Yet here, too, the Court has already considered—and rejected—these arguments. *N.S.*, 335 F.R.D. at 349–51.

28 C.F.R. § 0.111(a) authorizes the USMS to execute "[f]ederal arrest warrants pursuant to [R]ule 4 of the Federal Rules of Criminal Procedure, [f]ederal parole violator warrants pursuant to section 4206 of title 18 U.S. Code, and [f]ederal custodial and extradition warrants as directed." But this regulation does not provide authority for the USMS to arrest and detain individuals on suspected civil immigration violations for two reasons. First, in order for this regulation to apply to an ICE detainer, the "ICE detainer and the accompanying I-200 form must constitute a 'Federal custodial and extradition warrant[]' that the USMS has been 'directed to serve.'" *N.S.*, 335 F.R.D. at 350. But an I-200 form is not issued to the USMS. Per the form itself, it is issued to any "immigration officer authorized pursuant to sections 236 and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." ECF No. 3-1 at 6. USMS officers "are not immigration officers" and "certainly not the kind of specially trained officers specifically authorized under the applicable provisions." *N.S.*, 335 F.R.D. at 350. Second, this Court has already explained that I-200 forms are not "warrants" in the context of 28 C.F.R. § 0.111(a). *Id.*

28 U.S.C. § 566(c) authorizes the USMS to "execute all lawful writs, process, and orders issued under the authority of the United States." As this Court previously held, this is a "limited grant of power" that enables the USMS "to enforce only court orders." *Id.* at 350. An ICE detainer is a "non-court order [that] must be separately authorized." *Id.* Accordingly, Section 566(c) does not provide the USMS the authority to make civil immigration arrests.

> iii.   *The 1996 Order Does Not Grant The USMS The Authority To Make Civil Immigration Arrests Or To Detain Individuals Suspected Of Civil Immigration Violations*

Defendant next belatedly presents a newly discovered order as a basis for authority. This order, per defendant, grants the USMS authority to detain or arrest individuals suspected of civil immigration violations (and has not been previously reviewed by this Court). ECF No. 84-1 at 13. The 1996 Order, issued by then-Deputy Attorney General Jamie Gorelick, invokes 8 U.S.C. § 1103(a), a section of the INA that provides that immigration "powers, privileges, or duties" may be delegated. *See* Order No. 2008-96, *Delegation of Authority to Exercise the Powers and Duties of Immigration Officers* (Feb. 2, 1996), AR at 42. Thus, unlike the 2002 Order, the 1996 Order properly invoked the Attorney General's delegation powers under the INA.

This proper invocation means that if the 1996 Order conferred the authority to arrest or detain individuals suspected of civil immigration violations, such delegation would be valid. The problem with the 1996 Order is that it does no such thing. It authorizes the USMS to "perform and exercise the powers and duties of immigration officers for the purpose of *receiving, processing, transporting, handling property for, and maintaining custody of aliens in the custody of the Attorney General.*" AR at 42 (emphasis added). Defendant strains to argue that the "ICE hold" practice in question qualifies as merely maintaining custody of aliens already in the custody of the Attorney General. ECF No. 84-1 at 14. For multiple reasons, this argument fails.

10

A plain reading of the 1996 Order illustrates that it provides the USMS authority to maintain custody of only those aliens *already in the custody of the Attorney General*; in other words, maintain custody of *already arrested* aliens. The defendant disputes this, arguing that N.S. was "in the custody of the Attorney General" prior to his release and that the USMS merely "maintained" custody of him "after he was ordered released by continuing to hold him." ECF No. 84-1 at 14. But this argument strips the words of the 1996 Order from their context. The 1996 Order allows the USMS to "perform and exercise the powers and duties of *immigration officers* for the purpose of . . . maintaining custody of aliens in the custody of the Attorney General." AR at 42. And an immigration officer surely could not "maintai[n] custody of [an alien] in the custody of the Attorney General" if that alien had not yet been apprehended or arrested on an immigration violation—something the USMS has no power to do. *See infra* Part III.A.iv. In fact, the USMS's reading of the 1996 Order would allow the USMS, acting as immigration officers, to "maintain custody" of aliens interminably without ever effectuating an arrest just because those aliens had previously been in USMS custody in the D.C. Superior Court.

This conclusion illustrates the basic problem with the defendant's explanation of what it means to "maintai[n] custody of aliens in the custody of the Attorney General." Once N.S. or other members of his class were ordered released, a "new justification was needed either to continue holding him or make a new arrest." *N.S.*, 335 F.R.D. at 346. Instead of merely "preserv[ing] or keep[ing] in a given existing condition," *see* "Maintain," *Webster's Second New International Dictionary* (1934), the condition of N.S.'s custody was altered when he was put in an "ICE hold." Before the magistrate judge ordered N.S. released, he was in the custody of the USMS (and therefore the Attorney General) *as a criminal defendant in the D.C. Superior Court*. After N.S. was ordered released, he was no longer legally in the custody of USMS as a criminal defendant in

the D.C. Superior Court. But he was also not in the custody of the Attorney General as an alien, because he had not yet been arrested on civil immigration charges.

It is uncontroverted that the nature of detention or custody, lawful at its inception, can change when the circumstances of that custody change. *See Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (holding that a seizure that is lawful at its inception can violate the Fourth Amendment if it is unnecessarily prolonged). It is no wonder, then, that courts have held that an "ICE hold" constitutes a new seizure as opposed to a continuation of custody. *See Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) ("Because [defendant] was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes."). That is plainly what happened here. The USMS had the authority to detain N.S. as a criminal defendant, but not the authority to detain him for civil immigration charges he had not been arrested for. While the defendant tries valiantly to describe an "ICE hold" practice here as just maintaining custody of an alien in the custody of the Attorney General, defendant is unsuccessful.

The broader context of the 1996 Order reinforces this reading. The Justice Prisoner & Alien Transportation System ("JPATS"), the program name scrawled on the Order, AR at 42,  was established in 1995 when the "air fleets of the [USMS] and [ICE] merged" to create "a more efficient and effective system for transportation prisoners and criminal aliens." *Justice Prisoner & Alien Transportation System*, U.S. Marshals Service, http://www.usmarshals.gov/jpats/ (last visited October 5, 2021). Managed by the USMS, "JPATS transports sentenced prisoners who are in the custody of the Federal Bureau of Prisons (BOP) as well as to hearings, court appearances and detention facilities." *Id.* The 1996 Order therefore allows the USMS to act as immigration officers when "receiving, processing, transporting, handling property for, and maintaining custody

of" alleged criminal aliens already in custody on immigration charges when transporting them through JPATS. It does not confer the authority to newly detain or arrest those suspected of civil immigration violations. Accordingly, the 1996 Order does not confer on the USMS the authority to arrest or detain based on suspected civil immigration violations.

    *iv.*    *The 2002 Order Does Not Grant The USMS The Authority To Make Civil Immigration Arrests Or To Detain Individuals Suspected Of Civil Immigration Violations*

The Court previously rejected the 2002 Order as a basis for authority to arrest or detain aliens, finding that the government's stated rationale for promulgating the order failed to support such a delegation of authority. *N.S.*, 2020 WL 4260739, at *5. Unlike the 1996 Order, the 2002 Order failed to invoke § 1103(a). But the 2002 Order provided what the 1996 Order did not: the specific authority for the USMS to *apprehend* aliens. Because defendant now provides new evidence regarding the 2002 Order, the Court will reconsider the 2002 Order as a basis for authority. But despite the new evidence, this Court's analysis remains the same. The 2002 Order is facially invalid under *Chenery* at the time it was issued, and thus cannot authorize the USMS to make civil immigration arrests.

28 U.S.C. §§ 509 and 510 cannot support the Attorney General's promulgation of the 2002 Order because the Attorney General's "broad delegation authority does not apply where Congress has specifically and separately allocated enforcement authority over a certain action or set of actions" like it did with the INA. *Id.* Instead, for the Attorney General to give the USMS authority over civil immigration arrests properly, he would have had to invoke 8 U.S.C. § 1103, which allowed the Attorney General to delegate authority under the INA.

The Supreme Court has made clear that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Chenery I*, 318 U.S. at 95. It later clarified:

> If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; not can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.

*SEC v. Chenery Corp. (Chenery II)*, 332 U.S. 194, 196–97 (1947). Defendant argues that the *Chenery* doctrine does not apply here. But this Circuit has applied the *Chenery* doctrine and invalidated agency actions where the agency failed to invoke the proper authority. *See, e.g.*, *Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017) (holding that the EPA cannot invoke on appeal a source of authority for an action that "it did not rely on" when it acted).

The defendant attempts to rectify its *Chenery* problem by linking the 2002 Order, which lacks invocation of the proper statutory authority, to the 1996 Order, which *does* invoke the proper statutory authority. To link the two together, defendant points to an internal memorandum that references the 1996 Order and recommends signing the 2002 Order to "clarify that authority." AR at 44–45. This attempt to graft the 1996 Order's reference to 8 U.S.C. § 1103(a) fails for several reasons. The internal memorandum fails to reference 8 U.S.C. § 1103(a). *Id.* And even if it did, the 2002 Order *itself* makes absolutely no reference to the 1996 Order. *See* AR at 47. So classifying the 2002 Order as some sort of addendum is incorrect. Indeed, it appears that the USMS did not become aware of the 1996 Order—or at least did not bring it to the Court's attention—until the parties moved for summary judgment.

Courts will give agencies leeway when their "path[s] may reasonably be discerned." *Bowman Transp. Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 286 (1974). But this internal memorandum hardly provides a reasonable path from the 1996 Order's invocation of 8 U.S.C. § 1103(a) that requires us to incorporate it into the 2002 Order absent any other reference. Accordingly, the Court maintains its previous holding that the 2002 Order is facially invalid.

14

**B. Plaintiff Is Entitled To A Permanent Injunction**

While plaintiff has succeeded on the merits, "[s]uccess on an APA claim does not automatically entitle the prevailing party to a permanent injunction." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 137 (D.C. Cir. 2020). Instead, plaintiff must also satisfy the four-factor test. *eBay*, 547 U.S. at 391. The Court will evaluate each of these factors in turn.

      i.     *Plaintiff Suffered An Irreparable Injury And The Class Is Likely To Suffer Irreparable Harm Without A Permanent Injunction*

"To obtain [a permanent] injunction, then, the prevailing party must demonstrate that it actually 'has suffered' or is 'likely to suffer irreparable harm.'" *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.2d at 137 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (internal citations omitted). "While the irreparable-harm requirement is recited in the past tense, it is clear that future harm may qualify." *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, No. 1:16-CV-1534 (JEB), 2021 WL 2036662, at *6 (D.D.C. May 21, 2021) "Deprivations of physical liberty" like the "ICE holds" in question here are the type of "actual and imminent injuries that constitute irreparable harm." *Aracely R. v. Nielson*, 319 F. Supp. 3d 110, 155 (D.D.C. 2018). A "deprivation of liberty that includes being shackled and detained is a serious infringement on one's personal freedoms, and the fact that class members are detained for only a few hours does not change that fact." *N.S.*, 335 F.R.D. at 351–52. Accordingly, the harm to the plaintiff class from detention in an "ICE hold" if the practice is not enjoined constitutes an irreparable harm.

Defendant argues that plaintiff has failed to show irreparable harm because the USMS "may still transfer custody of a person immediately to ICE" and thus plaintiffs are "subject to lawful detention" regardless of the success of their claims. ECF No. 84-1 at 38. There is absolutely no evidence, however, that the USMS is transferring custody immediately to ICE in every or even

most instances where a criminal defendant subject to an ICE detainer is ordered released from custody. And even if *every* class member released from Superior Court custody is immediately transferred to ICE custody—which, given the lack of evidence, this Court has no reason to believe—that immediate transfer "spares class members hours of shackled detention in the Superior Court cellblock under USMS custody." ECF No. 90 at 28.

ii.    *The Remedies Available At Law Are Inadequate*

The remedies at law here are inadequate compensation. "[W]here a plaintiff requests injunctive relief mandating that an agency comply with a process that, if completed, could secure the plaintiff's freedom or could alleviate harsh conditions of confinement, the harm from detention surely cannot be remediated after the fact." *Aracely R*, 319 F. Supp. 3d at 155. Plaintiff and the class members were deprived of liberty and kept in shackles. *See* ECF Nos. 40-1 & 75-2 at 2. Damages could not compensate the plaintiff class for this deprivation of freedom.

iii.   *A Remedy In Equity Is Warranted Considering The Balance Of Hardships Between The Plaintiff And The Defendant, And The Public Interest Will Not Be Disserved By Permanent Injunction*

The USMS would not experience hardship if this Court granted a remedy in equity. While the USMS would clearly prefer to continue its practice of arresting and detaining individuals based on suspected civil immigration violations and holding them until ICE can take them into custody, the government "has no legitimate interest acting unlawfully." *N.S.*, 335 F.R.D. at 355. In other words, the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)) (internal quotation marks omitted). The Court explained above that the USMS's challenged "ICE hold" practice was *ultra vires* and "in excess of statutory jurisdiction [or] authority" in violation of the APA. "Because the government has no interest in acting unlawfully, and because the public has an interest in having its government follow

16

the law, the balance here tilts strongly in favor of an injunction." *Ramirez*, 2021 WL 4284530, at *13.

### C. Plaintiff Has Conceded His Habeas Corpus Claim

As mentioned above, N.S. raised a third claim in his complaint seeking immediate release from unlawful detention pursuant to habeas corpus for himself and his class members. ECF No. 3 at 11. N.S. is no longer in detention. He puts forth no evidence that anyone else in his class is currently in detention pursuant to an "ICE hold." And his request for summary judgment fails to mention his habeas claim. Accordingly, because defendant moved for summary judgment on all the "claims by the Plaintiff class," ECF No. 84, and plaintiff failed to argue or address his habeas claim, the Court will treat this claim as conceded and grant summary judgment for defendant on this claim. *See Byrd v. Vilsack*, 931 F. Supp. 2d 27, 40 (D.D.C. 2013).

### IV. CONCLUSION

For the reasons explained above, the Court will **GRANT IN PART** and **DENY IN PART** plaintiff's motion for summary judgment, and **GRANT IN PART** and **DENY IN PART** defendant's motion for summary judgment. The Court will permanently **ENJOIN** defendant and defendant's agents, subordinates, and employees from arresting and detaining criminal defendants in the Superior Court for the District of Columbia for suspected civil immigration violations. This Memorandum Opinion accompanies the Order signed and filed on September 30, 2021, and renders that Order appealable.

Date: October 7, 2021

Hon. Royce C. Lamberth
United States District Judge

17