**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**N.S.**, *individually and on behalf of all others similarly situated*,

    *Plaintiffs,*

**v.**

**ROBERT A. DIXON**, *in his official capacity as U.S. Marshal for the District of Columbia Superior Court*,

    *Defendant.*

Case No. 1:20-cv-101-RCL

**MEMORANDUM OPINION**

On October 7, 2021, this Court permanently enjoined Defendant Robert A. Dixon, in his official capacity as United States Marshal for the Superior Court of the District of Columbia, and Defendant's agents, subordinates, and employees from detaining and arresting criminal defendants in the Superior Court of the District of Columbia for suspected civil immigration violations. *N.S. v. Dixon*, No. 20-cv-101-RCL, 2021 WL 4622490, at *8 (D.D.C. Oct. 7, 2021). Defendant appealed and on June 27, 2025, the D.C. Circuit affirmed this Court's decision on the basis that the U.S. Marshals lacked the necessary training to carry out civil immigration arrests but vacated the permanent injunction in light of the Supreme Court's intervening decision in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022). *N.S. v. Dixon*, 141 F.4th 279, 287–88 (D.C. Cir. 2025). The Circuit then remanded the case for this Court to reconsider the appropriate remedy. *Id.* at 290.

On remand, Defendant argues for the first time that this case is "largely" moot because the U.S. Marshals have now received the necessary training to carry out immigration arrests. Def.'s Combined Opp'n & Mot. Dismiss ("Def.'s Opp'n & MTD"), ECF No. 117 at 6. The Court disagrees and holds that the U.S. Marshals continue to lack legal authority to make civil

1

immigration arrests both because the training they have received is insufficient under the relevant regulation, and because the January 2025 delegation of authority by the then-Acting Secretary of Homeland Security to the U.S. Marshals is invalid because it was done without notice and comment rulemaking.  The Court therefore finds it necessary to comply with the Circuit's mandate to consider the appropriate remedy on remand.

For the reasons explained below, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiffs' Motion for Alternative Remedies on Remand, ECF No. 112, and **DENY** Defendant's Motion to Dismiss, ECF No. 117.  The Court **DECLARES** that the United States Marshals Service lacks the legal authority and necessary training to detain or arrest criminal defendants in the Superior Court for the District of Columbia for suspected civil immigration violations.

## I.    BACKGROUND

### A.  Factual Background

The Court assumes familiarity with the material facts of this case, which are undisputed. *See N.S. v.* Hughes, 335 F.R.D. 337 (D.D.C. 2020); *N.S.*, 2021 WL 4622490, at *8.  Plaintiff N.S. was arrested on January 13, 2020, for robbery and destruction of property and was arraigned before Magistrate Judge Heide L. Herrmann the next day.  Pls.' Statement of Material Facts, ECF No. 75-2 ¶ 1.  Finding that N.S. was not a flight risk and posed no danger to the community, Magistrate Judge Herrmann ordered N.S. released on his own recognizance.  *Id*. ¶ 5.  After being ordered released—but before he could leave the courthouse—the United States Marshals Services ("USMS" or "U.S. Marshals") detained N.S. until officers from Immigration and Customs Enforcement (ICE) took him into custody.  *Id.* ¶ 6.

The USMS held N.S. based on an "ICE detainer."  *N.S.*, 335 F.R.D. at 342–43.  An ICE detainer:

> . . . serves to advise another law enforcement agency that the department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien.  The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department [of Homeland Security] to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a).  "Thus, an ICE detainer is a 'request,' not an order, for another law enforcement agency [to] hold a particular alien." *N.S*, 141 F.4th at 282.  With a detainer, ICE policy requires the agency to "issue an I-200 Warrant of Arrest (or an I-205 Warrant of Removal/ Deportation, the latter of which is not involved in this case)." *Id.* at 282–83 (quoting ICE Policy 10074.2 ¶ 2.4 (2017), [https://perma.cc/RFQ4-YHTY]).  "To execute an I-200 form, an immigration officer of a type listed in the regulation must have 'successfully completed basic immigration law enforcement training.'" *Id.* at 283 (quoting 8 C.F.R. § 287.5(e)(3)).  Following his detention, N.S. immediately filed a class complaint challenging his "ICE hold" on the basis that the U.S. Marshals lack both the statutory authority and required training to make civil immigration arrests.

### B. Procedural History

#### 1. District Court

N.S. filed his complaint on January 14, 2020, on behalf of himself and a putative class. Compl., ECF No. 3.  He brought three claims: (1) that the USMS's "ICE hold" practice was in excess of statutory authority and should be set aside under the Administrative Procedure Act (APA), *id.* at 9 (citing 5 U.S.C. § 706(2)(c)); (2) that the USMS had therefore acted ultra vires, *id.* at 10; and (3) that he had a habeas corpus claim to be released from federal custody, *id.* at 10–11 (citing 22 U.S.C. § 2241).  At the same time, N.S. moved for a preliminary injunction and to certify the class.  ECF Nos. 4, 5.  On May 7, 2020, this Court issued a preliminary injunction and certified the following class pursuant to Fed. R. Civ. P. 23(b)(2):

> All indigent criminal defendants in the Superior Court for the District of Columbia: (1) who were, are, or will be detained by officers of the United States Marshals Service for suspected immigration violations, and (2) as to whom Immigration and Customs Enforcement has not effectuated a warrant of removal/deportation (a form I-205) and/or has not obtained an order of deportation or removal.

*N.S. v. Hughes*, 335 F.R.D. 337, 355 (D.D.C. 2020).  The parties subsequently filed cross-motions for summary judgment.  ECF Nos. 75, 84.

This Court issued an Order on September 30, 2021, ECF No. 99, and a Memorandum Opinion on October 7, 2021, *N.S.*, 2021 WL 4622490, granting in part and denying in part both motions.  For Plaintiffs, the Court granted summary judgment on the APA and ultra vires claims, reasoning that immigration detention and arrest authority had never been properly delegated to the USMS under the relevant portion of the Immigration and Nationality Act (INA).  *See id.* at *7–14 (considering and rejecting Defendant's purported sources of authority for failure to invoke 8 U.S.C. § 1103, a portion of the INA that would have permitted the Attorney General (and subsequently the Secretary of Homeland Security) to delegate immigration "powers, privileges, [and] duties" conferred on them by the INA.)[1]  For Defendant, this Court granted summary judgment on Plaintiffs' habeas claim, reasoning that Plaintiffs had conceded the claim by failing to mention it in their own motion for summary judgment and by subsequently failing to respond after Defendant moved for summary judgment on all "claims by the Plaintiff class." *Id.* at *17.

Based on its grant of summary judgment to Plaintiffs on the APA and ultra vires claims, this Court permanently enjoined Defendant, Defendant's agents, subordinates, and employees

---

[1] Earlier in this litigation, when this Court granted a preliminary injunction, it also found that even if a proper delegation of authority had existed, the USMS did not meet the requirements of 8 C.F.R. § 287.5(e)(3), which requires immigration officers to "successfully complete[] basic immigration law enforcement training before making arrests." ECF No. 39 at 14 n.6 ("Defendant does not attempt to argue that the U.S. Marshals have completed such training."). At the time of its summary judgment decision, this Court referenced that finding in its procedural history of the case, *see* ECF No. 100 at 5, but ultimately rested its merits decision on the fact that the U.S. Marshals had not been delegated the authority to carry out civil immigration arrests.  It was therefore unnecessary to reach the question of whether the U.S. Marshals had also received the necessary training under the regulation.

"from arresting and detaining criminal defendants in the Superior Court for the District of Columbia for suspected civil immigration violations." *Id.* Defendant timely appealed this Court's decision to the D.C. Circuit. Plaintiffs did not cross-appeal the grant of summary judgment as to the habeas claim.

### 2. D.C. Circuit

After full briefing and oral argument, on June 27, 2025, the D.C. Circuit issued an opinion affirming this Court's conclusion that the U.S. Marshals lack the authority to make civil immigration arrests, but nevertheless vacated this Court's permanent injunction because of the Supreme Court's intervening decision in *Garland v. Aleman Gonzalez*. *N.S.*, 141 F.4th at 287. Because the Circuit rested its decision "on the narrower ground that the Marshals lack the requisite training" required by regulations governing civil immigration arrests, it did not decide whether the U.S. Marshals had been properly delegated authority to make civil immigration arrests in the first instance. *Id.* at 286.

#### (i) Delegation

Although Defendant pointed to several different sources of authority for the Marshals to make civil immigration arrests during summary judgment briefing, the Circuit did not find it necessary to decide the validity of any of those purported delegations. That's because "[o]n January 22, 2025, after oral argument and a change of presidential administration, the Acting Secretary of Homeland Security issued a new order relating to the authority of the Marshals to make civil immigration arrests (the 2025 Order)." *Id.* at 285 (citing Letter from Elissa P. Fudim to Clerk of Court, Feb 3, 2025 (Fudim Letter), pursuant to Fed. R. App. P. 28(j)). The 2025 Order cited 8 U.S.C. § 1103(a)(4) and (6) and "purported to authorize the Marshals to 'perform the following functions of an immigration officer granted to the [DHS] by [the INA] and confer upon

5

them the authority to do the same: . . . apprehending, any alien who is in the United States in violation of [the INA] or regulations thereunder.'"  *Id.* (quoting Fudim Letter) (alterations in original).

In a footnote, the Circuit indicated that the 2025 Order "rests upon the proper legal authority" because it "expressly invokes 8 U.S.C. § 1103(a)(4)."  *Id.* at 286 n.4.  The Circuit pointed out that § 1103 is "precisely the legal authority" that Plaintiffs have contended throughout this litigation that previous delegations should have invoked.  *Id.*  But because the Circuit held that the 2025 Order did not "relieve the Marshals of the pre-existing training requirement," *id.* at 286, it did not consider whether the 2025 Order is an invalid delegation of authority for another reason: because 8 C.F.R. § 287.5(e)(3)—the INA implementing regulation that enumerates which officers can make civil immigration arrests and says that "only" those officers can make arrests—was amended to include the U.S. Marshals without notice and comment rulemaking, *id.* at 286–87.  For reasons explained below, this Court finds it necessary to consider this argument made by Plaintiffs on remand.

### (ii) Training

Moving past the question of delegation, the Circuit held that "even if the relevant regulation could be expanded to include the Marshals, they would still have to receive training" before making a civil immigration arrest:

> [R]ecall that under INA regulations (a) an I-200 from "may be served only by those immigration officers listed in § 287.5(e)(3)," 8 C.F.R. § 236.1(b), and (b) that listed officers must have completed the required training *before* serving an I-200 form. *Id.* § 287.5(e)(3) . . . .
>
> * * *
>
> Assuming the list of officers authorized in § 287.5(e)(3) to make civil immigration arrests may be thusly expanded without amending the regulation, as [Defendant] claims, the 2025 Order does not relieve the Marshals of the pre-existing training requirement.  Rather, it simply authorizes the Marshals to "perform the

. . . functions of an immigration officer." Arresting aliens is not a function of an immigration officer who has not received the relevant training.

*Id.* at 286 (emphasis added). Because the U.S. Marshals had not received the necessary training, the Circuit agreed with this Court "that the Marshals were not authorized to arrest N.S." *Id.*

### (iii) Class-Wide Injunction, Aleman Gonzalez, and § 1252(f)(1)

Even though the Circuit affirmed this Court's decision on the merits because it agreed on the training issue, it vacated this Court's permanent injunction based on the Supreme Court's broad reading of 8 U.S.C. § 1252(f)(1) in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022)—a decision that came down while this case was on appeal. *Id.* at 288–90. In *Aleman Gonzalez*, the Supreme Court held that § 1252(f)(1), a provision of the INA that limits judicial review of certain immigration decisions, "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" specific provisions of the INA, including the "inspection, apprehension, examination, and removal of aliens." 596 U.S. at 549–50. Applying *Aleman Gonzalez*, the Circuit held that "[a]n injunction that restrains the [U.S. Marshals] from carrying out an arrest and detention of a criminal defendant pursuant to an I-200 form clearly affects provisions to which § 1252(f)(1) applies." *N.S.*, 141 F.4th at 289. Specifically, the Circuit found that 8 C.F.R. § 236, "which encompasses the regulation providing that only those classes of officers listed in 8 C.F.R. § 287.5(e)(3) may serve an I-200 form . . . claims its authority in part from 8 U.S.C. §§ 1226 and 1231, both of which are covered by § 1252(f)(1)." *Id.*

Accordingly, the Circuit concluded that "[n]otwithstanding [its] conclusion . . . that the Marshalls were not lawfully able to execute a civil immigration arrest for want of the requisite training," this Court was "barred by § 1252(f)(1) from entering a class-wide injunction preventing such arrests and detentions." *Id.* at 290 (citing *Aleman Gonzalez*, 596 U.S. at 552–53). The Circuit

therefore vacated the permanent injunction and remanded the case for this Court to reconsider the appropriate remedy. *Id.* In so doing, the Circuit observed in a footnote that Defendant did not contest "that § 1252(f)(1) 'does not proscribe issuance of a declaratory judgment[.]'" *Id.* at 290 n.7 (quoting *Make the Rd. New York v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020)).

Concurring in the judgment, Judge Walker noted that unlike the majority, he "would not narrow the remand to reconsideration of the appropriate remedy." *Id* at 290–91 (Walker, J. concurring). That's because "if the district court grants new remedies on remand, [Defendant] would be able to appeal the district court's decision with regard to both the merits and the new remedy." *Id.* at 291. At the same time, he suggested that the U.S. Marshals might narrow the instant dispute by "elect[ing] to provide the training that N.S. argues is required," thereby mooting any claims related to the "regulations about training." *Id.* Because Defendant attempted to take up Judge Walker's suggestion and provide the training, this Court finds that it is indeed necessary to consider more than just the appropriate remedy on remand.

### 3.  Proceedings on Remand

The Circuit's mandate issued on September 16, 2025, ECF No. 110, and on September 17, 2025, Plaintiffs filed a motion for alternative remedies on remand. Pls.' Mot., ECF No. 112. Specifically, Plaintiffs moved for: (1) a declaratory judgment that the U.S. Marshals do not have the authority to detain or arrest individuals for suspected immigration violations, and (2) class-wide habeas relief for members of the class who are unlawfully detained. *Id.* at 2, 4. In response, Defendant opposed Plaintiff's motion and moved to dismiss the suit under Federal Rule of Civil Procedure 12(h)(3) for lack of subject-matter jurisdiction. Def.'s Opp'n & MTD, ECF No. 118. Defendant argues that this case is now "largely" moot and should therefore be dismissed for two reasons. First, because the 2025 Order "properly authorized Marshals Service officers to effect

8

civil immigration detentions and arrests" by invoking § 1103 of the INA.  *Id.* at 6, 9.  Second, because the U.S. Marshals at the D.C. Superior Court "have now received 'basic immigration law enforcement training'" as required by § 287.5(e)(3).[2]  *Id.* at 6.

Defendant further contends that even if those developments "do not fully moot the case," Plaintiff's requested remedies are improper or unavailable.  *Id.* at 11–15.  For the reasons that follow, the Court agrees with Defendant that class-wide habeas relief is not available but finds that declaratory relief is both available and appropriate in this case.

## II.    LEGAL STANDARDS

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  A motion styled as one under Rule 12(h)(3) is treated the same way as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *Murray v. Amalgamated Transit Union*, 206 F. Supp. 3d 202, 207 (D.D.C. 2016).  A court considering such a motion must take all the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020).  "However, those factual allegations receive closer scrutiny than they do in the Rule 12(b)(6) context," and the court "may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim."  *Id.* (internal quotation marks and citations omitted).

---

[2] Defendant details the training that the Marshals have received since the Circuit opinion issued on June 27, 2025, in a declaration by Assistant Chief Deputy U.S. Marshal Lance Eastwood.  *See* Def.'s Opp'n & MTD, Ex. 1 ("Eastwood Decl."), ECF No. 118-1.

One way a court might lack subject-matter jurisdiction is if a case becomes moot—that is, "when, 'the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated' in circumstances where 'it becomes impossible for the court to grant any effectual relief whatever to the prevailing party.'" *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)) (quotation marks omitted). The party claiming mootness "bears the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 597 U.S. 697, 700 (2022).

**B. Declaratory Judgment**

The Declaratory Judgment Act provides, in pertinent part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaratory action under § 2201 is not a separate cause of action, but rather a prayer for relief. In order to issue declaratory relief, a court must first determine that there is a "case or controversy" within the meaning of Article III of the Constitution and the Declaratory Judgment Act. This inquiry should focus on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Powell v. McCormack*, 395 U.S. 486, 517–18 (1969) ("The availability of declaratory relief depends on whether there is a live dispute between the parties[.]"). Thus, declaratory relief requires a determination of (1) an actual, substantial controversy, (2) involving an interested party, (3) that warrants the immediate issuance of a declaratory judgment. *Md. Cas. Co.*, 312 U.S. at 273.

## III.    DISCUSSION

### A.  This Case is Not Moot

Defendant argues that this case is "largely" moot because the U.S. Marshals at the D.C. Superior Court "now plainly have the authority to effect civil immigration detentions and arrests and have received [the] basic immigration training" necessary to do so.  Def.'s Opp'n & MTD, ECF No. 117 at 6.  As such, Defendant argues that "the alleged harm suffered by Plaintiffs (being detained for civil immigration [offenses] by law enforcement without the authority or training to do so) has now evaporated" and Plaintiffs "no longer have a case or controversy to be heard by this Court."  *Id.* at 7–8.

Not so.  Defendant's argument "confuses mootness with the merits."  *Chafin v. Chafin*, 568 U.S. 165, 174 (2013).  Defendant's mootness argument depends on whether (1) the U.S. Marshals were properly delegated authority to act as immigration officers, and (2) whether the U.S. Marshals at the D.C. Superior Court received the necessary training to make civil immigration arrests—both important merits questions that the Court must answer in order to determine Plaintiffs' right to an alternative remedy.  Accordingly, this is a live case and Plaintiffs have a "concrete interest" in obtaining relief.  *Id.* at 172.  The Court starts with the question of delegation and then turns to the sufficiency of the training.

### B.  The 2025 Order is an Invalid Delegation of Authority to the U.S. Marshals

Recall that "[o]n January 22, 2025, after oral argument [at the D.C. Circuit] and a change of presidential administration, the Acting Secretary of Homeland Security issued a new order relating to the authority of the Marshals to make civil immigration arrests (the 2025 Order)."  *N.S.*, 141 F.4th at 285 (citing Fudim Letter).  The 2025 Order cited 8 U.S.C. § 1103(a)(4) and (6) and "purported to authorize the Marshals to 'perform the following functions of an immigration officer granted to the [DHS] by [the INA] and confer upon them the authority to do the

11

same: . . . apprehending, any alien who is in the United States in violation of [the INA] or regulations thereunder.'" *Id.* (alterations in original).

In a footnote, the Circuit observed that the 2025 Order had properly invoked 8 U.S.C. § 1103(a)(4). *Id.* at 286 n.4. The Circuit pointed out that § 1103 is "precisely the legal authority" that Plaintiffs have contended throughout this litigation that previous delegations should have invoked. *Id.* But because the Circuit held that the 2025 Order did not "relieve the Marshals of the pre-existing training requirement," *id.* at 286, it did not consider whether the 2025 Order is an invalid delegation of authority for another reason: because 8 C.F.R. § 287.5(e)(3)—the INA implementing regulation that enumerates which officers can make immigration arrests and says that "only" those officers can make arrests—was amended to include U.S. Marshals without notice and comment rulemaking, *id.* at 286–87.

On remand, Defendant contends that the D.C. Circuit "held that the government has now properly authorized the Marshals Service to effect immigration detentions and arrests." Def.'s Opp'n & MTD, ECF No. 117 at 9. But the Circuit held no such thing. The Circuit simply held that the 2025 Order "rests upon" the correct statutory provision. *N.S.*, 141 F.4th at 286 n.4. It did not reach the question of whether the then-Acting Secretary of Homeland Security could amend the list of officers authorized to make civil immigration arrests contained in § 287.5(e)(3) without a public notice and comment period. Because the Court agrees with Plaintiffs that § 287.5(e)(3) amounts to a legislative rule, the Court holds that the then-Acting Secretary did not properly amend the regulation.

To begin, the relevant controlling DHS regulation states that an I-200 "warrant of arrest may be . . . served *only* by those immigration officers listed in § 287.5(e)(3)." 8 C.F.R. § 236.1(b)(1) (emphasis added). Section 287.5(e)(3), in turn, provides a list of officers that

includes a variety of federal officers but not the U.S. Marshals. As Plaintiffs note, "only" is a limiting and restrictive term and by using the word "only," DHS chose to designate a limited set of officers who could exercise the power to make civil immigration arrests. So long as § 236.1(b)(1) and § 287.5(e)(3) "remain[] in force[,] the Executive Branch is bound" by them. *See United States v. Nixon*, 418 U.S. 683, 696 (1974) (citing *United States ex rel. Accardi v Shaughnessy*, 347 U.S. 260 (1954)).

"Legislative rules have the 'force and effect of law' and may be promulgated only after public notice and comment." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014) (quoting *INS v. Chada*, 462 U.S. 919, 986 n.19 (1983)). Rules are likely to be legislative if an agency publishes them in the Code of Federal Regulations. *Am. Min. Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993); *see also AT&T Corp. v. FCC*, 970 F.3d 344, 350–51 (D.C. Cir. 2020) (explaining that "the real dividing point between the portions of a final rule with and without legal force is designation for publication in the Code of Federal Regulations" (internal quotation marks and citation omitted)). Here, Plaintiffs argue that § 287.5(e)(3) is a legislative rule because it was promulgated through notice and comment rulemaking and was published in the Code of Federal Regulations. *See* 57 Fed. Reg. 47011 (Oct. 14, 1992) (proposed rule); 59 Fed. Reg. 42406 (Aug. 17, 1994) (final rule). For these simple reasons, the Court agrees.

As a legislative rule, § 287.5(e)(3) cannot be amended by unpublished order. The D.C. Circuit has held that "an 'amendment to a legislative rule must itself be legislative.'" *Nat. Res. Def. Council v. Wheeler*, 955 F. 3d 68, 84 (D.C. Cir. 2020) (quoting *Sierra Club v. EPA*, 873 F.3d 946, 952 (D.C. Cir. 2017)). That is, any amendment to an existing legislative rule must also occur through notice and comment rulemaking. No such rulemaking occurred in this case. The U.S.

13

Marshals were granted the authority to make civil immigration arrests through an unpublished order from the then-Acting Secretary of Homeland Security.  As such, the 2025 Order adds to the exclusive list of officers authorized to make civil immigration arrests—effectively amending § 287.5(e)(3)—without adhering to the notice and comment requirements of the APA.  Because § 287.5(e)(3) cannot be amended in this way, the 2025 Order did not successfully amend the regulation and cannot constitute a legitimate delegation of authority to the U.S. Marshals to make civil immigration arrests.

Because the 2025 Order was not a proper delegation, Plaintiffs prevail on their APA claims (1) that the U.S. Marshals acted in excess of statutory authority and (2) that the U.S. Marshals acted ultra vires.

## C. The Training Provided to the U.S. Marshals is Insufficient

Even if the 2025 Order was a valid delegation of authority to the U.S. Marshals, which it is not, Plaintiffs win on their APA claims for the separate reason that Defendant has not demonstrated to the Court that the Marshals have received sufficient training under the relevant DHS regulation.

Under 8 C.F.R. § 287.5(e)(3), listed "immigration officers who have successfully completed basic immigration law enforcement training" are authorized to make civil immigration arrests.  "Arresting aliens is not a function of an immigration officer who has not received the relevant training."  *N.S.*, 141 F.4th at 286.  8 C.F.R. 287.1(g) defines "basic immigration law enforcement training" as:

> the successful completion of one of the following courses of training provided at the Immigration Officer Academy or Border Patrol Academy: Immigration Officer Basic Training Course after 1971; Border Patrol Basic Training Course after 1950; Immigration Detention Enforcement Officer Basic Training Course after 1977; and Immigration Customs Enforcement Special Agent Training, after 2002; *or training substantially equivalent* thereto as determined by the Commissioner of CBP, the

14

> Assistant Secretary/Directors of ICE, or the Director of USCIS with respect to personnel in their respective bureaus.

8 C.F.R. § 287.1(g) (emphasis added).  Thus, to effect civil immigration arrests, the U.S. Marshals must have received one of the listed trainings, or training that a discrete list of immigration officials has determined is substantially equivalent to those listed trainings.

On remand, Defendant presents evidence that the Marshals at the D.C. Superior Court have now received basic law enforcement immigration training.  *See* Def.'s Opp'n & MTD, Ex. 1 ("Eastwood Decl."), ECF No. 117-1.  Through the declaration of Assistant Chief Deputy U.S. Marshal Lance Eastwood, Defendant states that the Marshals have received "personnel training 'substantially equivalent' to the specific trainings listed in the regulation."  Def.'s Opp'n & MTD, ECF No. 117 at 10 (citing Eastwood Decl. ¶¶ 5–10).  This training was provided by the Office of the Principal Legal Advisor at ICE and covered: (1) civil immigration authorities in Title 8 of the U.S. Code, as well as implementing regulations; and (2) an overview of the Fourth Amendment focused on civil immigration enforcement authorities.  Eastwood Decl. ¶ 5, ECF No. 117-1.  The training was provided virtually via Microsoft Teams and was scheduled to last approximately three hours and forty-five minutes.  *Id.* ¶ 6.  There is no evidence in the record whether the training did ultimately last for the scheduled time.

Defendant has not provided the Court with any information about the listed trainings in § 287.1(g) or compared those trainings to the training that the Marshals received.  Nor has Defendant provided any evidence that one of the immigration officials listed in the regulation previously determined that the new training is "substantially equivalent."  While it is possible that the trainings *are* substantially equivalent or may amount to substantial equivalence when considered alongside the Marshals' underlying training, Defendant has not provided enough evidence for the Court to draw either conclusion.  On this barebone record, the Court cannot

15

conclude that the training the Marshals received satisfies the requirements of § 287.1(g).  As a result, the Court finds that the U.S. Marshals lack the necessary training to carry out civil immigration arrests.

### D.  The Plaintiffs are Entitled to an Alternative Remedy

The Court having found that the U.S. Marshals at the D.C. Superior Court are making civil immigration arrests without the proper authority or training, Plaintiffs are entitled to an alternative remedy on remand.  The Court will grant declaratory relief but declines to re-open Plaintiffs' conceded habeas claim and will therefore deny class-wide habeas corpus relief.

### 1.  Declaratory Judgment

Plaintiffs move for a declaratory judgment that the U.S. Marshals lack the statutory authority and necessary training to make civil immigration arrests.  Defendant argues that this relief is not available because the dispute is moot.  For the reasons stated above, that argument is rejected.  Defendant next argues that this relief is "unsupportable" because it would either operate as the type of class-wide injunction that is proscribed by 8 U.S.C. § 1252(f)(1) or would fall outside the relief available to a Rule 23(b)(2) class—the type of class certified in this case.  Def.'s Opp'n & MTD, ECF No. 117 at 12–14.  The Court takes each argument in turn.

#### (i)      Section 1252(f)(1) does not bar declaratory relief.

Defendant argues that class-wide declaratory relief runs afoul of § 1252(f)(1), which prevents lower courts from enjoining or restraining the operation of certain INA provisions, including those that pertain to the arrest and detention of aliens.  Defendant concedes "that the D.C. Circuit has indicated that Section 1252(f)(1) does not outright bar granting declaratory relief," Def.'s Opp'n & MTD, ECF No. 117 at 12, but argues that the statute bars declaratory relief in this case because it "would have the practical effect of interdicting the Marshals Service's ability to

16

detain and arrest aliens" by "blur[ring] the line 'between injunctive and declaratory relief.'" *Id.* at 12–13 (quoting *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982)).  Defendant predicts that if this Court grants declaratory relief, "every single member of the class can, and will, immediately seek an injunction grounded on the authority of the declaratory judgment." *Id.* at 13 (quoting *Alli v. Decker*, 650 F.3d 1007, 1020 n.2 (3d Cir. 2011) (Fuentes, J., dissenting)).  As a result, Defendant suggests that Plaintiffs' requested declaration amounts to more than "ordinary declaratory relief" and operates more like an injunction.  *Id.* at 12.  But Defendant provides no authority to support a legal distinction between "ordinary" and not-so ordinary declaratory relief, or to support the idea that § 1252(f)(1) bars one type of declaration but not the other.

Indeed, it is well settled in the D.C. Circuit that § 1252(f)(1) does not proscribe class-wide declaratory relief.  *See Make the Rd. New York*, 962 F.3d at 635 ("The Supreme Court has specifically held that Section 1252(f) does not bar declaratory relief." (citing *Nielsen v. Preap*, 586 U.S. 392, 402 (2019)));  *see also N.S.*, 141 F.4th at 290 n.7 ("This court has stated, and Marshal Dixon does not contest, that § 1252(f)(1) 'does not proscribe issuance of a declaratory judgment.'" (quoting *Make the Rd. New York*, 962 F.3d at 635)).  "That holding accords with every other circuit to have answered the question."  *Gutierrez v. Noem*, No. 25-cv-1766-SLS, 2025 WL 3496390, at *14 (D.D.C. Dec. 5, 2025) (collecting cases).  This is true even if declaratory relief predictably leads class members to bring individual injunctive actions.  Declaratory relief "may be persuasive," but it "is not ultimately coercive."  *Steffel v. Thompson*, 415 U.S. 452, 471 (1974).  For this reason, declaratory relief is legally distinct from an injunction and does not fall within § 1252(f)(1)'s statutory bar.  *See Biden v. Texas*, 597 U.S. 785, 798 (2022) (affirming that § 1252(f)(1) "narrow[ly]" applies to remedies that "enjoin or restrain the operation" of relevant sections of the

INA). Because class-wide declaratory relief "is not ultimately coercive" on the parties, it cannot possibly enjoin or restrain any sections of the INA.

At least one other federal district court has issued a declaratory judgement that "captures the central holdings" of its summary judgment opinion after the Supreme Court's intervening decision in *Aleman Gonzalez* foreclosed injunctive relief. *See Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1049 (S.D. Cal. 2022). There, the court reasoned (and the government did not contest) that "class-wide declaratory relief is both available and warranted," even though it is "no substitute for a permanent injunction." *Id.* at 1034. Specifically, the court found that declaratory relief would "serve the dual purposes of the Declaratory Judgment Act—(1) clarifying and settling the legal relations at issue, and (2) terminating and affording relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* at 1038–39, 1049 (cleaned up). In fact, the government agreed in that case that a declaratory judgment "would extinguish the disputes giving rise to this action and avoid future litigation." *Id.* at 1049.

Despite the government's change in position, the Court finds that declaratory relief is not barred by § 1252(f)(1). Moreover, the Court finds that a declaratory judgment would serve to clarify the parties' legal rights and afford Plaintiffs some limited form of relief in this case.

> (ii)    *Rule 23(b)(2) does not bar class-wide declaratory relief.*

Defendant separately argues that class-wide declaratory relief is unavailable to the Rule 23(b)(2) class—the type of class certified in this case. Rule 23(b)(2) permits a class to be maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Accordingly, Defendant argues that "Rule 23(b)(2) allows *only* declaratory relief that has the same practical effect as an

injunction" and is therefore barred by § 1252(f)(1).  Def.'s Opp'n & MTD, ECF No. 117 at 14 (emphasis added).  Once again, Defendant fails to appreciate the difference between an injunction and a declaratory judgment.

Rule 23(b)(2) provides for class resolution where "injunctive relief *or corresponding declaratory relief* is appropriate."  Fed. R. Civ. P. 23(b)(2) (emphasis added).  The use of the word "or" suggests either form of relief can sustain the class.  *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) (noting that the use of "or" to join two phrases "suggests" that it covers "either activity"); *United States v. Woods*, 571 U.S. 31, 45 (2013) ("[Or] is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979))).  Defendant argues that "any anticipated declaratory relief issued under" Rule 23(b)(2) "should be equivalent to an injunction."  Def.'s Opp'n & MTD, ECF No. 117 at 13.  This reading of the text is impermissible, as it would obviate the need for the word "or."  *See also* 7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1775 (3d ed. 2026) ("[T]he rule does not require that both forms of relief be sought and a class action seeking solely declaratory relief may be certified under subdivision (b)(2).").

Defendant is therefore incorrect.  The declaratory relief contemplated by Rule 23(b)(2) is not "equivalent to an injunction" and is not barred by § 1252(f)(1).  This is true even when class-wide declaratory relief leads individual class members to bring suit for injunctive relief.  Section 1252(f)(1) bars only class-wide injunctive relief, not individual injunctive relief.  *See Al Otro Lado*, 619 F. Supp. 3d at 1044 ("[I]f this Court issues class-wide declaratory relief, Plaintiff class members can institute a separate, non-class action suit and rely upon this Court's declaratory judgment as a predicate to further relief." (citation omitted)); *see also Guerrero Orellana v. Moniz*, 808 F. Supp. 3d 167, 189 (D. Mass. 2025) (holding that Rule 23(b)(2) "squarely permits" a

19

procedure where a final declaratory judgment establishes a right on a class-wide basis and enables "each class member" to "secure a coercive remedy enforcing that right in an individual action").

Having determined that class-wide declaratory relief is permitted by § 1252(f)(1) and Rule 23(b)(2), the Court enters the following declaratory relief:

> It is **DECLARED** that the United States Marshals Service lacks the legal authority and necessary training to detain or arrest criminal defendants in the Superior Court for the District of Columbia for suspected civil immigration violations.

### 2. Class-Wide Habeas Corpus Relief

Plaintiffs move additionally for class-wide habeas corpus relief for members of the class who are unlawfully detained.  Recall that this Court previously granted summary judgment for Defendant on Plaintiffs' habeas claim, reasoning that Plaintiffs had conceded the claim by failing to mention it in their own motion for summary judgment and by subsequently failing to respond after Defendant moved for summary judgment on all "claims by the Plaintiff class." *N.S.*, 2021 WL 4622490 at *17.  Defendant appealed this Court's grant of summary judgment on the APA claims.  Plaintiffs did not cross-appeal as to the habeas claim.

On remand, Plaintiffs argue that they should be able to re-open their habeas claim.  They note that at the time of summary judgment, their habeas claim was "practically unnecessary," as they had received preliminary relief enjoining Defendant from making civil immigration arrests and were pursuing permanent relief of the same nature.  Pls.' Reply, ECF No. 119 at 26.  At the time, Defendant did not contest that permanent injunctive relief was available.  Accordingly, Plaintiffs report that "summary judgment one way or the other on the habeas claim was of little import to the parties." *Id.*  Despite the intervening change in law rendering a permanent injunction unavailable, Defendant argues on remand that the law-of-the-case doctrine should be applied to

prevent the Court from reconsidering its grant of summary judgment on Plaintiffs' habeas claim. However, the Court finds it unnecessary to decide whether that doctrine applies.

Plaintiffs' decision to abandon their habeas claim during summary judgment briefing ultimately did not turn on the availability of a permanent injunction. A permanent injunction would prevent Defendant from continuing to make unlawful civil immigration arrests. A writ of habeas corpus would require Defendant to release any unlawfully detained individuals from custody. These forms of relief are not the same. A permanent injunction is not a substitute for a writ of habeas corpus. It is therefore not plausible that Plaintiffs conceded their habeas claim *because* a permanent injunction was available. Plaintiffs knowingly conceded the claim and then knowingly chose not to appeal. As such, the Court will not reconsider its summary judgement decision on remand.

## IV.    CONCLUSION

For the reasons explained above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Alternative Remedies on Remand, and **DENIES** Defendant's Motion to Dismiss. The Court **DECLARES** that the United States Marshals Service lacks the legal authority and necessary training to detain or arrest criminal defendants in the Superior Court for the District of Columbia for suspected civil immigration violations. This Memorandum Opinion accompanies the Order signed and filed on July 22, 2026, and renders that order appealable.

Date: _____7·22·26_____

Royce C. Lamberth
United States District Judge

21